### JENKINS v. RICHMOND &c. RAILROAD COMPANY.

1. RAILROADS—FELLOW-SERVANTS.—It is an established rule that a railroad company is not liable to one of their agents for an injury arising from the negligence of another competent agent.

2. IBID.—IBID.—The conductor of a preceding freight train and the assistant fireman of a following freight train are fellow-servants, to the extent that the fireman on train No. 2 cannot recover from the master for damages received by him in jumping from his engine to avoid a collision with cars on the track, detached from train No. 1, of whose presence proper signals by torpedoes or otherwise had not been given. Whether persons in the same employment are fellow-servants does not depend upon the respective rank, grade, or authority of the servants.

3. IBID.—SAFE TRACK.—It is the duty of the railroad company as master to furnish a safe track and competent servants, but this duty is not violated where the track, safe in itself, is rendered dangerous for the time by the omission of one of its servants to give the necessary notice of the obstruction thereon to a fellow-servant on an approaching train.

Before WALLACE, J., Richland, October, 1892.

This was an action by John H. Jenkins against the Richmond and Danville Railroad Company, commenced February 23, 1891.

*Messrs. Andrew Crawford* and *Alston & Patton,* for appellant.

*Mr. B. L. Abney,* contra.

November 3, 1893. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. This action was brought by the plaintiff, an employee of the defendant, for the recovery of damages sustained by him through the negligence of the defendant company. The case came on for trial before his honor, Judge Wallace, and the defendant company interposed an oral demurrer, that the complaint did not state facts sufficient to constitute a cause of action against the defendant. The judge, without stating his reasons, sustained the demurrer and dismissed the complaint. From this order the plaintiff appeals to this court upon one general ground, that the judge erred in sustaining the demurrer.

Upon this state of the pleadings, the facts well alleged must be assumed to be true; and, therefore, it is necessary to set out the important allegations made.    He complains, substantially, as follows: "That the plaintiff, John H. Jenkins, on March 3, 1890, at the time of committing the grievances hereinafter complained of, was in the employment of the defendant as an assistant fireman upon a locomotive engine, No. 135, the property of the said defendant, driven by steam upon its road; and it was the duty of the defendant to provide an unobstructed track for said engine running upon its track, and to give warning of any obstruction thereon by placing torpedoes on the track, and signaling said engine at a distance therefrom remote enough to enable the engineer to avoid a collision therewith, by the employment of the appliances used in stopping engines, trains, &c.    That on the said March 3, 1890, while the plaintiff, in the performance of his duty as aforesaid, on the locomotive engine No. 135, was going north from Columbia over the defendant's road, and at a point thereon about 2½ miles from said city, there were standing on defendant's track, on the line of the Columbia and Greenville Railroad, several cars in charge of the conductor of the train from which they had broken loose, and which had preceded by fifteen or twenty minutes said engine No. 135 in its progress up the road as aforesaid.

"That the defendant, its agents and servants in charge of the loose cars as aforesaid, not regarding their duty, conducted themselves so carelessly, negligently, and unskillfully, that they failed to make said obstruction known to those in charge of the approaching engine No. 135 in time to stop the same, either by placing torpedoes on the track or by signaling the engineer running said engine, at a point sufficiently removed from said obstruction wherein it was possible to stop said engine, as is required by the rules and regulations governing the running of engines on the road of the above named defendant. That for the want of due care and attention to the duty devolving upon the said defendant, its agents and servants as aforesaid, at the time and place aforesaid, and while the said loose cars were in the use and service of said defendant, and in charge of one of its conductors as aforesaid, on the track of the said rail-

road, and while the plaintiff was in the performance of his duty in the capacity as aforesaid, in the service of said defendant, by reason of the carelessness, negligence, and recklessness of the said defendant, its agents and servants, in failing to give proper signals, which would have stopped the approaching engine in time to avoid all possibility of a collision, this plaintiff, to save his life, was forced to leap from said engine while it was running rapidly over said track, just before it reached said obstruction, whereby his arm was broken at the wrist, causing a permanent injury; and he was for days and weeks unable to work at all, and can never perform a man's full share of manual labor, owing to said permanent injury, and his sufferings, both mental and physical, were intense and continued until his wound healed; all to his damage $1,950."

The principles upon which a railroad company is responsible to a stranger or to passengers transported for a consideration, are reasonably well defined and understood by the profession. But a corporation must of necessity act through agents, and the relations between the ideal existence known as the corporation, and its own employees for hire, are not at all so clear or well defined. On the contrary, there is some confusion and much difference of opinion on the subject; so much so, that the doctrines as to "fellow-servants" and responsibility for their acts, have been characterized by a learned judge "as a perplexing and tangled subject." Since the case of *Murray* v. *South Carolina R. R. Company*, 1 McMull., 385, decided by our then Court of Errors in 1841—the first of our cases on the subject, if not the first on the American Continent— the general rule has been considered as established on principle and policy, "that a railroad company is not liable to one of their agents for an injury arising from the negligence of another competent agent." And in one of the latest and fullest publications which treats of the subject, the principle is stated thus: "The general rule resulting from considerations of justice as of policy, is, that he who engages in the employment of another for the performance of specified duties and services for compensation, takes upon himself the natural and ordinary risks and perils incident to the performance of such services.

The perils arising from the carelessness and negligence of those who are in the same employment are no exceptions to this rule; and where a master uses due diligence in the selection of competent and trusty servants, and furnishes them with suitable means to perform the services in which he employs them, he is not answerable to one of them for an injury received by him in consequence of the carelessness of another, while both are engaged in the same service  *  *  *  The rule thus established was almost universally followed, and the labor of the courts since has been in properly applying it, and determining its principal limitations," &c.   See 7 Am. & Eng. Enc. Law, 823, and numerous cases cited.

The plaintiff here was an assistant fireman on train No. 2, injured, as alleged, by the negligence of "the agents and servants" (without indicating which) of the defendant company on another train, No. 1, in not giving timely notice of certain "loose cars" being on the track of the company; and he, the plaintiff, claims that the judge committed error in holding that the conductor on train No. 1, and the assistant fireman on train No. 2, were fellow-servants in the sense of the rule.   The employees of a railroad are generally numerous, and necessarily divided into classes, according to the work assigned them.   But all of the persons thus employed, under one principal, in the conduct of one enterprise, such as operating a railroad, are, according to the ordinary meaning of the word, *servants or employees of one principal,* and, as it would seem, *"fellow-servants"* of each other.

But it is said that, by successive decisions of the courts, the rule has been modified, and, according to the limitations imposed, the parties here were not technically "fellow-servants." After some conflict, we suppose it may be regarded as settled, that, whether parties are "fellow-servants" in the sense of the rule, does not depend upon the grade, rank, or authority of the two servants.   A fireman and engineer or conductor are "fellow-servants."   Judge Cooley states that persons are "fellow-servants, when they engage in the same common pursuit, under the same general control."   Cooley on Torts, 541.   Judge Thomson, in his work on Negligence, announces as a general

rule, that all who serve the same master work under the same control, derive authority and compensation from the same common source, are engaged in the same general business, though it may be in different grades or departments of it, are fellow-servants, who take the risk of each other's negligence." Or, in the forcible view of Judge Brewer, lately appointed associate justice of the Supreme Court of the United States, in the case of *Howard* v. *Denver &c. R. R. Co.*, 24 Am. & Eng. R. R. Cas., 448 (1886); "Neither can it be said that Ryan and decedent were engaged in a different class of work. True, they were on different trains, and at the time of the accident had no opportunity of noticing the conduct of each other until too late to prevent the collision. But being engaged in the same kind of service, they must naturally have been often thrown into contact, and had ample opportunities for mutual supervision. * * * He who engages in train service knows that other trains besides his will be running, and may fairly be considered as contracting to take the risk of the negligence of the employees managing such trains. He must expect to be employed now on one train and now on another, to be thus thrown into contact with the other employees in that service, to know himself what is proper care in such work, and be able to detect any evidence of carelessness on the part of those in like service." See *Howard* v. *Denver &c. R. R. Co.*, 24 Am. & Eng. R. R. Cas., 448; *New Port News R. R. Co.* v. *Howe*, 52 Fed. Rep., 362; *Norfolk & W. R. R. Co.* v. *Donnelly's Adm'r*, 14 S. E. Rep., 692 (1892), 88 Va., 853.

But it is said that there is one limitation to the general rule which has been well established, and it is this: that while the question as to whether parties are fellow-servants is not to be determined by the rank or grade of the offending or injured servant, "it is to be determined by the character of the act being performed by the offending servant. If it is an act that the law implies a contract duty on the part of the employer to perform, then the offending employee is not a servant, but an agent; but as to all other acts they are fellow-servants." As we understand it, this is the rule which has been adopted in this State. See *Gunter* v. *Graniteville Company*, 18 S.

C., 270, and *Calvo* v. *R. R. Company*, 23 *Id.*, 529. In these cases, the Chief Justice announced the doctrine as follows: "The true question is, whether the person in question is employed to do any of the duties of the master. If so, then he cannot be regarded as the fellow-servant or co-laborer of the operatives, but is the representative of the master, and any negligence on his part in the performance of the duty of the master thus delegated to him must be regarded as the negligence of the master." This we have held to be the true test; and the only question now is, whether it is applicable to and must rule this case.

Let us see what is the proper construction of this limitation. As we have seen, the employees of a railroad company are necessarily divided into classes, to each of which, in the division of labor, certain specified ordinary duties are assigned, as to which each servant, within the compass of his employment, in one sense, is the representative of the company. Is it the intention that "the duties of the master" referred to, as changing the character of an employee into that of master, should include those matters of ordinary regulation and management, or only those original and essential duties implied by the contract of service; such, for instance, as the duty of keeping a safe and sound track, furnishing all proper appliances, competent servants, &c.? But be this as it may, competent authority has indicated the following as "the duties of the master" referred to, viz: to furnish suitable machinery and appliances, and keep them in repair; the selection and retention of sufficient and competent servants, and the establishment of proper rules and regulations, &c. Under the head of "appliances" is understood to be included a proper roadway, or, as it has come to be phrased, "a safe track and a safe place to work."

Did the company directly or indirectly violate any of these fundamental contract duties in this case? It will be observed that there is no allegation in the complaint that the cars were "loose" on the track from any fault or negligence on the part of the servants on train No. 1, nor any distinct allegation as to the time *when* they were detached, or, indeed, in what manner

the accident occurred; nor is there any allegation that the track was not safe or sufficient, or that there was wanting suitable appliances or competent servants. As we read it, the only allegation of fact made by the complaint was one not of commission, but of omission—that the servants on train No. 1 did not give proper signals, which would have stopped the train approaching in time to avoid the collision. This is entirely a different case from that of Calvo, *supra*, where one Wooten, a section master and supervisor of the track-laying force, disregarding the signal carried by a preceding train, which indicated that it was to be followed by another, did *not* wait for that other train, but at once took up the track, making a gap in the road, which derailed the engine and inflicted the injury complained of. It thus appears that there was not only a failure to furnish a safe track, but really the destruction of it. The facts of this case are essentially different; and we may adopt as applicable to this, the statement of a learned judge, lately made in one of the numerous cases on the subject: "So far as the place and machinery, both were safe. There is no pretense that the track was not in good order, or that the engines and other implements for the movement or control of the train, were not sufficient. It will not do to say that because Ryan's engine was in the way and collided with decedent's train, the track was not clear, and, therefore, the master had failed in his duty of providing a 'safe place' for the employees to work in and upon. The negligent use by one employee of perfectly safe machinery, will seldom be adjudged a breach of the master's duty of providing a safe place for the employees. Such a construction would make any negligent misplacement of a switch, any collision of trains, even any negligent dropping of tools about a factory, a breach of the duty of providing a 'safe place.' The true idea is, that the place and the instruments must in themselves be safe, for this is what the master's duty fairly compels, and not that the master must see that negligent handling by an employee of the machinery shall not create danger," &c.

We can not doubt that the employees of train No. 1, and the plaintiff on No. 2, were fellow-servants, when the plaintiff

jumped and broke his arm, without such fault or negligence on the part of the company as to make them liable for damages; and, therefore, we think the Circuit Judge committed no error of law, in dismissing the complaint.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.