## Richmond.

### NORFOLK & WESTERN RAILROAD CO. v. HOUCHINS' ADM'R.

#### DECEMBER 2, 1897.

1. MASTER AND SERVANT—*Assignable duties—Gradation in service—Railroads—Fellow-servants—Conductor and brakeman.*—Duties devolved by law upon the master are not assignable, and, for a breach of such duties, or the negligent performance thereof, either by the master or his agent, the company is liable. The liability of the master, however, does not depend on mere gradation in employment, but rather upon whether the servant through whose negligence the injury was inflicted was, at the time, discharging a duty devolved by law upon his principal. In the moving of trains, it is essential that some one of the crew of each train shall be selected as a leader, boss, or conductor, to direct the execution of the work, but all engaged on the train are operatives in a common employment, under the same master, from whom they derive their authority and compensation, and are fellow-servants. The mere superiority of the conductor in moving his train does not elevate him to the position of principal or vice-principal, and hence if a brakeman is injured through the negligence of his conductor in failing to obey the rules of the master for running his train, the master is not liable.

Argued at Wytheville.    Decided at Richmond.

Error to a judgment of the Circuit Court of Giles county rendered June 2, 1894, in an action of trespass on the case wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Reversed.*

The opinion states the case.

*Johnston, Taylor & Johnston* and *Fulkerson, Page & Hurt,* for the plaintiff in error.

*W. J. Henson* and *J. C. Wysor,* for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

This is a writ of error to a judgment in an action of trespass on the case, brought in the Circuit Court of Giles county by Joseph M. Swaine, administrator of W. G. Houchins, deceased, against the Norfolk & Western Railroad Company, to recover damages for the death of his intestate, alleged to have been occasioned by the negligence of the defendant company.

The facts appearing from the record are not controverted, and are as follows:

Houchins was killed about 5:45 A. M. July 15, 1893, while employed as front brakeman on an extra west-bound freight train of the defendant company, known as extra No. 273, in a collision near Shumate, Giles county, between that train and an east-bound train of the defendant company known as the second section of train No. 82, a regular schedule train. The road was single tracked at the locality of the accident, and both trains were running under the general train rules of the defendant company, and not under special order of any kind. Under the general rules of the defendant company, governing these trains, the schedule train known as No. 82, and composed of two sections, numbered 1 and 2, had the right of way, and extra No. 273 should have waited at Shumate until both sections of No. 82 had passed. No. 273 being an extra train, was inferior to both sections of No. 82, a regular schedule train, and the movement of extra No. 273 was accordingly governed by the following rules of the company:

"79. All trains are designated as regular or extra. Regular trains are those represented on the time table, and may consist of one or more sections. All sections of a train except the last must display signals as provided in rule No. 36. Extra trains are those not represented on the time table. An engine without cars, in service on the road, shall be considered a train."

"82. All extra trains are of inferior class to all regular trains of whatever class."

"83.   A TRAIN OF INFERIOR CLASS MUST, IN ALL CASES, KEEP OUT OF THE WAY OF A TRAIN OF SUPERIOR CLASS."

Rule 83 being general and of vital importance, is printed in the rule book of the company in large type in order to call the particular attention of all employees to it.

On the morning of the accident, extra No. 273 had arrived at Shumate, and was lying on the siding when the first section of No. 82 passed, displaying green signals, to indicate that another train was following.   The green signals were displayed as provided in rule No. 36, to-wit:

"36.   Two green signals by day and two green lights by night, displayed in the places provided for that purpose *on the front of an engine*, denote that the train is followed by another train running on the same schedule, and entitled to the same time table rights as the train carrying the signals."

Among other rules of the company governing the entire train crew, under circumstances surrounding the train—extra No. 273, on the occasion of this accident—are these:

"4.   Every employee of this company whose duties are in any way prescribed by these rules must always have a copy of them at hand when on duty, and must be conversant with every rule. He must render all the assistance in his power in carrying them out, and immediately report any infringement of them to the head of his department."

"78.   All signals must be used strictly in accordance with the rules, and trainmen and enginemen must keep a constant lookout for signals."

The intestate, brakeman Houchins, is shown to have received and receipted for a book of the rules of the defendant company when he entered its service in April, 1890, more than three years before his death.

It is admitted by conductor Miller and engineman Ranson, of extra No. 273, who were examined as witnesses for the plaintiff in this suit, that they saw the green signals displayed on the first section of No. 82, and that they were seen by brakeman Houchins there is no room to doubt; but when the first section

of No. 82 reached and stopped at Shumate, the conductor and all the train crew of extra No. 273, including brakeman Houchins, went to sleep, in utter disregard of their duties, and when conductor Miller awoke he did not know whether the second section of train No. 82 had passed or not. He awoke, he says, just as the first section of No. 82 was leaving, or had left, Shumate. Nor did any of the crew of extra No. 273 know whether the second section of No. 82 had passed or not. Brakeman Houchins was still asleep in the open space between the tracks. Conductor Miller, not knowing whether the second section of No. 82 had passed or not, asked the night telegraph operator at Shumate if second No. 82 had passed, and if it was carrying green signals, and upon being told by the operator that it had passed and was not carrying green signals, conductor Miller, acting upon this incorrect information given him by the operator, aroused his engineman, who in turn awoke brakeman Houchins, and train extra No. 273 was taken out of the siding, and started on its journey west, resulting in a head-on collision between train extra No. 273 and the second section of No. 82, about one mile west of Shumate, causing the death of brakeman Houchins.

It is further shown in the evidence that the conductor of extra No. 273 was not waiting for any signal from the operator at Shumate to take his train out of the siding at that point, nor did he receive, nor was he to receive, any orders or signals from or through the operator for the movement of his train. No change had been made in the semaphore or other fixed signals at Shumate for extra No. 273 to leave that point, because extra No. 273 was running under the general rules. The evidence clearly shows that the accident was caused by the negligent conduct of conductor Miller in ordering his train, extra No. 273, out of the siding at Shumate, in disregard of the general rules of the defendant company governing him and his crew.

That any of the servants of the defendant company were incompetent was neither alleged nor proven; nor was there any alle-

gation or proof that the company had failed to furnish safe and suitable machinery, appliances, &c., or failed to promulgate proper rules for the government of its servants. In fact, the evidence of both plaintiff and defendant proved conclusively that the rules of the company would have effectually prevented the collision if the conductor and train crew of extra No. 273 had not disobeyed them. But the contention of counsel for defendant in error is that, as brakeman, Houchins was under the control and subject to the orders of conductor Miller; that the latter stood in the category of principal or vice-principal to brakeman Houchins, and that for the negligence of conductor Miller the company is liable.

The only question which requires any particular consideration by this court is presented in the instructions "XX" and "YY," given by the court, at the trial, *ex mero motu*, over the objection of the plaintiff in error, and which are as follows:

## "XX."

"The court instructs the jury that if they believe from the evidence that the plaintiff's intestate was killed by a collision between two trains of the defendant company, as charged in declaration, and further beleive from the evidence that such collision was caused by the carelessness and negligent act of the servants of the defendant company in charge of one of said colliding trains, to-wit: train No. 273, and shall further believe from the evidence that all of the employees of the defendant company on said train No. 273, including said intestate, under the rules of said company, were charged with the duty jointly, that is as a train crew, of properly observing all danger signals, and of providing generally for the safety of the movement of said trains, and that such duty, to care for the safety and movement of the trains, devolved upon all of the employees thereon, and not upon one or more specially, and shall further believe from the evidence that the death of the plaintiff's intestate was caused proximately by the joint negligence of all of said train crew, including said intestate, then the plaintiff cannot recover."

### "YY."

"The court instructs the jury that if all the employees of the defendant company on extra No. 273 were jointly and equally charged with the duty of providing for the safe movement of said train, and in this regard were in equal authority, then, as to this duty, and its proper discharge, they were fellow-servants; but if, as to this duty, said employees on said train were not equally charged with the discharge thereof, but one or more of said employees were in authority over the others, then in discharge of such duty, those employees who were in authority over the others were not fellow-servants of those under their authority, so far as the duty devolving on said superior servants was concerned."

These instructions read together, but more particularly the latter, instructed the jury that if conductor Miller was, by the rules of the plaintiff in error, in authority over brakeman Houchins, he, the conductor, was not a fellow-servant of brakeman Houchins. In other words, the instructions told the jury to determine the question of fellow-service between the conductor and brakeman by the gradations in rank of the two men in the service of the plaintiff in error. They did not require the jury to determine this question by the character of the negligent act causing the injury, but made the determination of the question depend upon whether the negligent servant was in authority over the injured servant.

The opinion by Keith, P., in *Norfolk & Western Railroad Co. v. Nuckols,* 91 Va. 193, reviewed, as far as it was deemed necessary, the former decisions by this court upon the question of fellow-service, and the following propositions of law, pertinent to the case at bar, were laid down:

"1. A person entering the service of another, assumes all risks naturally incident to that employment, including the danger of injury by the fault or negligence of a fellow-servant," and

"3. The liability (of the master) does not depend upon gradations in employment, unless the superiority of the person caus-

ing the injury was such as to put him in the category of principal or vice-principal."

That is to say, that when a person enters the service of another, he assumes the risks naturally incident to the employment, including the danger of injury by the fault or negligence of another engaged in the same employment, and the mere fact that one engaged in the same work or employment is, by the rules of the master for the direction and government of those in his employ, made a leader, boss, or conductor, or by whatever name he might be designated or known, to see to the execution of the work, and by the neglect of this leader, boss, or conductor, one engaged in the same common work of the master is injured, does not of itself place the one so put in authority in the category of principal or vice-principal; but the questions remains whether or not the negligent servant was performing some duty which the master owed to the injured servant for his safety, and could not therefore delegate to another, which is a mixed question of law and fact, to be determined by the jury under proper instructions. In that case it was held that a tract repairer and engineman, though in different departments, were, by the very nature of their employment, brought in frequent contact, and the risk of negligence by the one must therefore be considered to have been in contemplation of the other when service under the common master was accepted.

The decision in that case rested in a large degree upon the reasoning of this court in *Norfolk & W. R. Co.* v. *Donnelley*, 88 Va. 853, in which an injured engineman was denied the right to recover of the railroad company for injuries to him by the negligent misconstruction of a right of way order by the conductor and engineman on another train, which collided with the train upon which Donnelley was running, and, as was well said by Keith, P., in *Nuckols's case, supra,* the court, by its unanimous opinion, evinced a disposition to return to the simple terms of the rule stated by Chief Justice Shaw in *Farwell's case,* 4 Metc. (Mass.) 49. It throws aside the doctrine of "inferior and superior" of gradations in employment, and of "separate depart-

ments," and states forcibly and clearly that "all serving a common master, working under the same control, deriving authority and compensation from the same source, and engaged in the same general business, although in different grades or departments, are fellow-servants, and take the risk of each other's negligence."

In *Nuckols's case, supra,* it is clearly shown that the true ground upon which the railroad company was held liable in the case of *Moon v. R. & A. R. Co.,* 78 Va. 745, was that the company had been negligent in keeping its track in a good and safe condition, and the case one of "concurrence of independent concurring causes."

The cases decided by this court subsequent to its decision in *Norfolk & W. R. Co. v. Donnelley, supra,* holding the doctrine that a conductor is not a fellow-servant of a brakeman under him, rested mainly upon *Moon's case, supra,* and the case of *Railroad Co. v. Ross,* 112 U. S. 377, which latter decision has been completely overturned by the more recent decisions of the same court, and which are in thorough accord with the decision of this court in *Donnelley's case* and *Nuckols's case.*

It was therefore properly said by Riely, J., in *Norfolk & W. R. Co. v. Ampey,* 93 Va. 108, that the question of the relation of a conductor of a train to the crew under him was an open question, to be decided by this court when it became necessary.

That is the presise question now before us, and from what has gone before, it will be seen that the test is not whether conductor Miller was, by the rules of the plaintiff in error, given authority over his train and of the employees on it, to direct and order them, but whether his negligent act, which resulted in the death of brakeman Houchins, was an act done when in the performance of a duty which the law devolved upon the plaintiff in error, and so one that is non-assignable, for which the master is still liable, or one of mere operation.

In the case of *Richmond Locomotive Works v. Ford,* 94 Va. 627 the question was, whether a boss or foreman of a gang of hands (of which he was a member), engaged in moving locomotive

wheels about the yards of the Locomotive Works, which was under the management of a superintendent, was a fellow-servant, or vice-principal. In that case it was held that such a boss or foreman was a fellow-servant, and that the negligence was one of the risks which the members of the gang assumed when they entered into the service. It was said by BUCHANAN, J., in the opinion: "Where the execution of work directed to be done by the master or his representative is entrusted to a gang of hands, it is necessary that one of them should be selected as leader, boss, or foreman, to see to the execution of the work. This kind of superiority of service is so essential and so universal that every workman in entering upon a contract of service must contemplate its being made in a proper case. He therefore makes his contract of service in contemplation of the risk of injury from the negligence of another fellow workman. The foreman or superior servant stands to him, in that respect, in the precise position of his other fellow-servants." See also *Moore Lime Co.* v. *Richardson, ante,* p. 326.

What was said· in that case is applicable to the case at bar. The running of trains by a railroad company is work of such a character as to make it essential that one of the crew on each train be selected as a leader, boss, or conductor as he is always known, to direct the execution of the work, and this kind of superiority, it may be said, is as essential and universal in the moving of trains upon a railroad, as in other pursuits where the employees work in squads, gangs, or crews. Every man, in entering upon a contract of service upon a train, as fireman, engineman, or brakeman, must contemplate its being run under the orders and direction of a conductor, who, though designated as conductor, with authority to control and direct the men under him, is but a co-laborer or co-workman with the other members of the crew, engaged in a work of mere operation, a common employment, under one and the same common employer, from whom all derive their authority and compensation. The brakeman, in entering the service of a railroad company, therefore,

makes his contract of service in contemplation of this superiority of service in the conductor, and assumes the risk of injury from the negligence of his fellow-workmen, though it be that of a brakeman, fireman, engineman or conductor; and all engaged upon the train, it would seem clear, upon reason and authority, stand to each other in the relation of fellow-servants.

We do not mean to say that under all circumstances a conductor of a train is to be held a fellow-servant with the other members of the crew, for he may under some circumstances be placed in the category of principal or vice-principal, when he is by authority of the master performing a duty which the master is not permitted by law to delegate to another; but a conductor of a train is not placed in the category of principal or vice-principal by the mere superiority given him in the work of operating or moving his train.

The duties which the master owes to the servant, in a case like the one we have under consideration, may, by abundant authority, be stated as follows:

*First.* To provide reasonably safe and suitable machinery and appliances for the business. This includes the exercise of reasonable care in furnishing such appliances, and the exercise of like care in keeping the same in repair, and making proper inspections and tests.

*Second.* To exercise like care in providing and retaining sufficient and suitable servants for the conduct of the business.

*Third.* To establish proper rules and regulations for the service, and, having adopted such, to conform to them.

The law is equally as well settled that the master is not required to be a guarantor or insurer in this behalf, but is only required to employ reasonable and ordinary care in selecting what he requires, and is necessary for his business.

In the recent case decided by the Supreme Court of West Virginia (*Jackson* v. *Norfolk & W. R. Co.*, 27 S. E. 278), wherein it was held that a conductor is a fellow-servant with a brakeman and other servants on the train, not a "vice-principal," Brannon,

J., in an able opinion, defines what are and what are not the "non-assignable duties" of a railroad company, and says: "The doing of these things is a duty of the master to the servant for the latter's safety. The master can either perform these duties personally, or he may delegate their performance to some one else, whom the books call 'vice-principal,' because he stands, as to these duties, in the place of the master; but if either fails in the performance of a duty in any of these respects, and damage results to a servant, the master must answer. If, however, the damaging negligent act is not one of the things which rest on the master as a duty to the servant, it is the act purely of the servant, and the injured servant must look to him, not to the master. These duties falling upon the master are called 'non-assignable duties,' because he owes them to the servant, and he cannot assign them to another to perform, and exempt himself from liability for their misperformance. These duties are sometimes spoken of as duties in construction, preparation, and preservation, as contrasted with mere work of operation. For instance, the construction of the railroad or other work, the preparation of machinery and implements to be used in the business, the preservation of the track or working place, or machinery and appliances, in proper, safe condition, and the selection of proper servants to work. The master having well done his duty in these things, their handling and use in the prosecution of the work designed is a work of mere operation, and this work the servants must perform well in the interest of their master and fellow-servants; and if one fails to do so, and injures a fellow-servant, the master is not liable, since he cannot always stand by and watch the servant in his every act, in the carrying on or operation of the business, and the law, of necessity, permits him to commit this work of mere operation to other hands. . . . ."

Learned commentators have said: "The law is severe enough in holding employers responsible for good track, machinery, etc., etc., without making them guarantors for the acts of every

servant. ' You cannot make the master liable for an act of mere operation, no matter by what servant done. You cannot exempt him for an act not one of mere operation, but of his personal duty, though done by any servant. If he does the act in person, he is liable regardless of the act." Wharton on Neg., sec. 205; Beach on Contributory Negligence, secs. 302 and 303.

The rule known as the rule of "superior servant," that is, where the negligent servant is in grade of employment superior to the injured one, or where one servant is placed by the master in a position of subordination, and subject to the orders and control of another in such a way and to such an extent that the servant so placed in control may reasonably be regarded as representing the master as his *alter ego,* or vice-principal, and the inferior servant is injured by the negligence of the superior servant, the master is liable, originated, it may be said, in the case of *Railroad Co* v. *Ross, supra,* and nearly all the decisions of the other courts holding to the doctrine that a conductor of a train was a vice-principal, standing in the shoes of his master, because given authority and control over his train, and of the other employees on it, etc., are traceable to the *Ross case* as the authority upon which the decision mainly rested. But the doctrine enunciated in the *Ross case* has, as we have before said, been overthrown by the more recent decisions of the United States Supreme Court, among which are: *Railroad Co.* v. *Baugh,* 149 U. S. 368; *Railroad Co.* v. *Hambly,* 154 U. S. 349; *Railroad Co.* v. *Keegan,* 160 U. S. 259; *Railroad Co.* v. *Peterson,* 162 U. S. 346; *Railroad Co.* v. *Charless,* 162 U. S. 359; *Oakes* v. *Mase,* 165 U. S. 363; and *Martin* v. *Atchinson, Topeka & Santa Fe R. Co.,* 166 U. S. 399. In the last case only Justice Harlan dissented. See also *Alaska Treadwell Gold Mining Co.* v. *Whelan,* recently decided by the United States Supreme Court, not yet officially reported.

In the case of *Railroad Co.* v. *Peterson, supra,* the court carefully reviews the subject, and holds that a foreman of a gang of

laborers, having in charge the superintendence of the gang in working, with power to hire and discharge hands, and exclusive charge of their direction and management in their employment, is a fellow-servant, in fact and in law, with others of the gang, and that the company is not liable for any injury received by one of them from the negligence of the foreman, because of their fellow-service.    The syllabus in that case is: 1. That the mere superiority of the negligent employee in position and in power to give orders to subordinates, is not a ground for such liability. 2. That in order to form an exception to the general law of non-liability, the person whose neglect caused the injury must be one who was clothed with the control and management of a distinct department, and not of a mere separate piece of work in one of the branches of service in a department.    3. That when the business of the master is of such great and diversified extent that it naturally and necessarily separates itself into departments of service, the persons placed by the master in charge of these separate branches and departments, and given control therein, may be considered, with reference to employees under them, vice-principals and representatives of the master, as fully as if the entire business of the master were placed by him under one superintendent.

Elliott, in his recent work on Railroads, vol. 3, sec. 1330, says: "There is comparatively very little conflict upon the question as to whether trainmen engaged in operating the same train are fellow-servants, the very decided weight of authority holding them to be fellow-servants.    This seems to us the only rule that can be defended on principle; for such employees are, in the strictest sense, engaged in the service of a common master, their service is of the same general character, and the object of the service is a common one.  .  .  .  .  We cannot perceive how the doctrine which declares that employees of the same train are not fellow-servants can be upheld without violating the principle that the details of operating a railroad do not pertain to, or form a part of, the master's duty."

And, in section 1331, the same author says: "It seems to us that the rule must be the same whether the trainmen are engaged on the same train, or on different trains. There is, as we think, no valid reason for discriminating between cases where the employees are engaged in operating the same train, and cases where they are engaged in operating different trains. In both cases they are employed in the same line of service, and by a common master."

In the view taken by this learned author we fully concur, and, in addition to the numerous authorities cited by him in favor of the doctrine that trainmen, although engaged on different trains, are fellow-servants, many others may be cited, among which are: 3 Wood. Ry. Law, 1788; Wood's Master & Servant, sec. 448; Story's Agency, sec. 453; Webb, Poll. Torts, 121; 7 Amer. & Eng. Enc. Law, 834 and notes; *Hankins* v. *Railroad,* 142 N. Y. 416; *McElligot* v. *Randolph* (Conn.), 22 Atl. 1094; *Railway Co.* v. *Smith* (Texas), 13 S. W. 562; *Harrison* v. *Railroad Co.* (Mich.), 44 N. W. 1034; *Coke Co.* v. *Peterson* (Ind. Sup.), 35 N. E. 7; *Railway Co.* v. *Smith,* 59 Ala. 245; *Jenkins* v. *Railroad Co.* (S. C.), 18 S. E. 182; Mechem's Agency, sec. 668; *Avery* v. *Meek,* 96 Ky. 192; *Railroad Co.* v. *Donnelley,* 88 Va. 853, and *Norfolk & W. R. Co.* v. *Nuckols, supra.*

Judge Cooley, in his work on Torts (2d ed.), pp. 639-640, says: "In some quarters a strong disposition has been manifested to hold the rule [of fellow-service] not applicable to the case of a servant who, at the time of the injury, was under the general direction and control of another, who was intrusted with duties of a higher grade, and from whose negligence the injury resulted. But it cannot be disputed that the negligence of a servant of one grade is as much one of the risks of the business as the negligence of a servant of any other; and it seems impossible, therefore, to hold that the servant contracts to run the risk of negligent acts or omissions on the part of one class of servants, and not those of another class. Nor, on grounds of public policy, could the distinction be admitted, whether we con-

sider the consequences to the parties to the relation exclusively, or those which affect the public, who, in their dealings with the employer, may be submitted to risks. Sound policy seems to require that the law should make it for the interest of the servant that he be not himself negligent, but also that any negligence of others in the same employment be properly guarded against by him, so far as he may find it reasonably practicable, and be reported to his employer, if needful; and, in this regard it can make little difference what is the grade of the negligent servant, except as the superior authority may render the negligence more dangerous, &c. See also authorities cited in note 1, p. 640, Cooley on Torts, *supra.*

In England, and in some of the States of the Union, this question of fellow-service is controlled by statute, but we have no such statute in our State, and the doctrine enunciated in *Norfolk & W. R. Co.* v. *Donnelley, supra,* and *Norfolk & W. R. Co.* v. *Nuckols, supra,* sustained by the most eminent commentators, and a great majority of the adjudicated cases, whose reasoning is followed in the decision of this case, must be regarded as the settled law with us until the law-making power of the State may deem it proper to change it.

It follows that we are of opinion that instructions "XX" and "YY," given by the court below, are erroneous, and should not have been given, nor should the instruction numbered 1, given at the instance of the plaintiff, which we have not deemed it necessary to set out at length in this opinion, but which is in conflict herewith.

The judgment of the Circuit Court must, therefore, be reversed and annulled, and the cause remanded for a new trial, to be had in accordance with this opinion.

*Reversed.*