## RICHEY v. SOUTHERN RY.

1. EVIDENCE—NEGLIGENCE—MASTER AND SERVANT.—Under allegations of negligence by a conductor and his railway company, proof of negligence by other servants is admissible.

2. MASTER AND SERVANT — MACHINERY AND APPLIANCES — RAILROADS.—The failure of a brakeman to properly set a switch so that his engine is derailed and the engineer injured, is as to the engineer a breach of one of the non-assignable duties of the master. *Divided Court.*
   *Coleman v. R. R..*, 25 S. C., 446, *affirmed by divided Court.*

3. IBID.—IBID.—IBID.—It is duty of master to keep his road-bed and appliances in proper and safe condition, and not merely to exercise ordinary care in that regard.

4. CHARGE.—REQUEST to charge principle of law not applicable to any issue raised by the pleadings, is properly refused.

5. REHEARING refused

Before DANTZLER, J., Abbeville, October, 1903. Affirmed.

Action by R. A. Richey against Southern Railway Co., Columbia and Greenville Railway Co. and Les Moore. From judgment for plaintiff, defendants appeal.

*Mr. T. P. Cothran,* for appellant, cites: *Failure of brakeman to properly set the switch, was the act of a fellow-servant, for which master is not responsible:* 56 S. C., 456; 109 U. S., 483; 149 U. S., 368; 12 S. E. R., 124; 1 McM., 385; 25 S. C., 128; 51 S. C., 79; 39 S. C., 507; 44 N. Y. Supp., 277; 22 Id., 749; 16 Utah, 27; 41 N. Y. Supp., 128; 71 Fed. R., 953; 104 Fed. R., 955; 92 Fed. R., 884; 133 U. S., 375; 166 U. S., 399; 28 S. E. R., 267; 63 Fed. R., 109; 33 Fed. R., 801; 33 Minn., 518; 88 N. Y., 481; 23 Ind., 81; 7 Ill. App., 322; 128 Mass., 10; 20 Or., 285; 10 Allen, 233; 4 Met., 49; 16 Am. & Eng. R. R. Ca., 421; 128 Mass., 8; 3 Elliott on R. R., secs. 1276, 1318; 20 Ency., 2 ed., 64; 62 N. Y.; 251; 23 Ind., 81; 129 Mass., 268; 46 Mich., 158; 70 N. Y., 171; 61 Wis., 159; 68 Ill., 545; 88 N. Y., 481; 78 Ind., 79; 12 Lea., 46; 33 Minn., 218; 22 Hun., 289; 35 La. Ann., 1166; 7 Ill. App., 522; 62 Barb., 218; 18 Fed., 304; 25 M. C. Q. B., 517; 68 Cal., 171; 89 Tex., 475; 20 Or., 285; Bish. on Non. Con. L., sec. 665; McKerney on Fellow-Servants, sec. 138; 23 Cal., 230; 18 R. I., 775. *It is only duty of master to use ordinary care in providing safe appliances:* 20 Ency., 2 ed., 71, 75; 135 U. S., 554; 4 A. & E. R. C., 276; 9 Id., 472; 37 S. W. R., 34; 59 F. R., 48; 161 N. Y., 637; 100 U. S., 218; Wood's Master and Ser., sec. 329; 63 Fed. R., 798; 82 Fed. R., 550; 12 A. & E. R. C., 666; 91 Fed. R., 224; 37 S. E., 286; 22 S. E. R., 872; 81 Fed., 679; 69 Fed., 825; 27 A. & E. R. C., 75; 60 S. C., 159; 21 S. C., 546; 18 S. C., 268; 65 S. C., 194; 61 S. C., 494; 66 S. C., 302; 65 Fed. R., 384.

*Mr. Wm. N. Graydon,* contra, cites: *It is duty of master to furnish a safe and suitable road-bed:* 37 S. C., 54; 25 S. C., 446; 23 S. C., 528; 22 S. C., 557; 19 S. C., 20; 18 S. C., 262,

275; 80 N. Y., 46; 68 S. C., 55. *Conductor is representative of company, and his orders are those of master:* 25 S. C., 128; *Wilson* v. *R. R.,* 51 S. C.

The opinion in this case was filed June 24, but remittitur held up on petition for rehearing until

July 13, 1904. The opinion of the Court was delivered by

MR. JUSTICE GARY. This is an action for damages on account of injuries sustained through the alleged negligence of the defendants. The jury rendered a verdict against the defendants for $12,500.

As some of the questions presented by the exceptions arise under the pleadings, it is deemed advisable to set out certain parts of them.

The first, second and third paragraphs of the complaint contain merely formal allegations, and the fourth paragraph alleges that the defendant, Les Moore, was a conductor in charge of the train of cars at the time hereinafter mentioned. The other allegations thereof are as follows:

"V. That on the 20th day of March, 1902, plaintiff was, and had been for several years, an engineer in the employment of the defendant, Southern Railway Company, and on the 20th day of March, 1902, was engaged in running an engine on the Columbia and Greenville Railroad, and the conductor in charge of said train was the defendant, Les Moore.

"VI. That the train run by the plaintiff was a freight train, and plaintiff was ordered by the conductor, Les Moore, to put some cars of coal on the coal chute tracks, so that they could be unloaded into the coal bins, which coal chute was situated at Hodges, a station in Greenwood County, between Columbia and Greenville, on the Columbia and Greenville Railroad.

"VII. That in order to get to the point where the said cars were to be placed, plaintiff had to run his engine and the car of coal he was ordered to place out on a side track or spur track leading up to said coal chute, and said side track

or spur track was up a steep grade, and was known to the defendants to be dangerous to go up and down.

"VIII. That on said 20th day of March, 1902, at about half-past 8 o'clock p. m., the said defendant, Southern Railway Company, and its conductor, Les Moore, carelessly and negligently, wrongfully and unlawfully caused the 'monkey switch' to be unsecurely and improperly fastened, and left open and uncared for, in consequence of which said engine and tender coming down said side track or spur track from said coal chute, or bins, by the negligence and carelessness of the defendants as above stated, was derailed and turned over, and this plaintiff was permanently and seriously injured in his spine, and has been incapable of doing any work since, has suffered excruciating pains, and has had to spend a large amount for drugs and medical attention, all to his damage in the sum of $25,000.

"IX. That it was the special duty of the defendant, Les Moore, who was conductor on said train, to have been with said train and looked after said track, and seen that it was in proper condition, but said conductor, in violation of his duty and unmindful of the obligation resting on him, carelessly, negligently, wrongfully and unlawfully left said train and failed to go to the coal chute, but staid at the depot, a distance of six or eight hundred yards from said coal chute, and was there when said engine was derailed, and thus contributed to said wrong and injury, to the damage of the plaintiff $25,000.

"X. That plaintiff was an experienced engineer, and was making at the time he was injured from $125 to $130 per month, but owing to the careless, negligent, wrongful and unlawful conduct of the defendant herein above set forth, the plaintiff has been seriously and permanently injured, &c."

The defendants denied the material allegations of the complaint, and alleged that the injury was caused by the plaintiff's negligence.

In considering the questions raised by the exceptions, we will follow the arrangement adopted by the appellant's attor-

ney in his argument. We will first dispose of those num-
bered (1) and (2), which are as follows:

"(1) Under the allegations of the complaint, should the
plaintiff have been allowed to recover upon proof of
the negligence of any other servant of the company
than Moore, the conductor?

"(2) If not, is there any evidence tending to show negli-
gence on the part of Moore, the conductor?"

By reference to paragraphs VIII. and X. of the complaint,
it will be seen that plaintiff not only alleges negligence on the
part of Les Moore, the conductor, but likewise on the part of
the Southern Railway Co. This disposes of both the said
questions.

The third question argued by the appellants' attorney is as
follows:

"(3) If the plaintiff could rely upon the negligence of
Latimer, the brakeman, was Latimer's failure to set the
switch the act of a fellow-servant or a breach of one of the
master's non-assignable duties?" In the case of
*Coleman* v. *R. R.*, 25 S. C., 446, it appeared that
Coleman was a laborer on a material train of which
Griffin was the conductor; that, after their day's work, the
train was run to the station at Eastover, and arriving there a
little after sundown, the conductor, Griffin, had the switch
turned so as to connect with a side track at that place, and
ran the train on said side track in order to spend the night.
The laborers remained in the shanty of the material train;
about two hours thereafter, the regular passenger train, in
passing, ran on the side track and into collision with the ma-
terial train, by which one man was killed and the plaintiff
was injured. The negligence alleged was in allowing the
switch to remain in connection with the turn-out instead of
the main line. In that case, the Court uses this language:
"In the view that Griffin, the conductor, may have left the
switch open after using it, the argument was made that,
although clear negligence on his part, it was the negligence
of a fellow-servant, for which the company is not responsible

to the plaintiff; that in reference to the special duty of the conductor to restore the switch to its place in connection with the main line, he was not a 'middleman' representing the company, but a mere 'switchman,' doing the duty of 'a mere operative.' We do not see clearly the distinction suggested. Taking the rule to be as stated by Mr. Wood in his work on Master and Servant, section 438, it seems to us that the adjustment of the switches was an important duty resting on the company, no matter to whom the performance of that duty was delegated. Mr. Wood says: 'To formulate a rule from these cases it would be as follows: Whenever the master delegates to another the performance of a duty to his servants, which the master has impliedly contracted to perform in person, or which rests upon him as an absolute duty, he is liable for the manner in which that duty is performed by the middleman whom he has selected as his agent, and to the extent of the discharge of those duties by the middleman, he stands in the place of the master; but as to all other matters he is a mere co-servant?' In the late case of *Calvo* v. *Railway Company* (23 S. C., 528), this Court held that a locomotive engineer and a section master of track workers are not fellow-servants, in the sense that the railroad company employing them would not be liable to one for damages resulting to him from the negligence of the other." The Court then quotes with approval the following language from the case of *Calvo* v. *R. R. Co.,* to wit: "Now, it is well settled that it is the duty of the master, not only to provide his servants, in the first instance, with suitable and safe machinery and other appliances to do the work for which they are employed, but also to keep the same in proper repair; and any negligence in the performance of such duty, whether done by the master in person or by subordinate agents selected by him for the purpose, would render the master liable for any injury sustained by one of his servants by reason of such negligence. The question is as to the nature of the duty, not as to the rank or grade of the person employed to perform it. Is it a duty which the master owes

to his servants? Under the well settled rule above mentioned, we think that nothing can be clearer than that it is the duty of a railroad company to provide a suitable and safe track over which its locomotive engineers and other servants of that class are required to run its trains, and that negligence on the part of those to whom it commits such duty is the negligence of the company." Proceeding in the Coleman case just mentioned, the Court says: "If it is the duty of the company to provide a suitable and safe track, of which there is no doubt whatever, it is most assuredly no less its duty to keep in order and rightly placed the switches, which are certainly important parts of the track, and probably needing more strict attention than any other. We do not think that the conductor, Griffin, in respect to the special duty of readjusting the switch, was a fellow-servant of the plaintiff, in the sense of the rule relied on. See *Crouch* v. *C., C. & A. R. R. Co.,* 22 S. C., 557;" also, *Reed* v. *R. R.,* 37 S. C., 42, 16 S. E., 289; *Gunter* v. *Graniteville, Mfg. Co.,* 18 S. C., 262; *Lazure* v. *Graniteville Mfg. Co.,* 18 S. C., 282.

Upon the request of the appellants' attorney permission was granted to review the case of *Coleman* v. *R. R.,* 25 S. C., 446. The authorities upon the question of fellow-servants are numerous and conflicting. The difficulty arises in the application of general and well settled principles to the particular case under consideration. In transporting passengers and freight, a railroad company is necessarily compelled to utilize and employ many agencies. The great object in view is the operation of its trains of cars. The law imposes certain duties upon the master which public policy demands shall not be delegated by him to others, and even when he attempts to assign them to others, he is still liable for the negligence of those discharging these non-assignable duties.

One of the duties which the law imposed upon the master in this case was to provide a safe and suitable track at the time the plaintiff as engineer operated the train of cars upon it. It is not a sufficient excuse for the master to say that although the track was unsafe, nevertheless it had furnished

one of its employees with suitable and proper machinery for making it safe at the time of the accident. If this could be successfully contended, it would enable the master to avoid responsibility for failing to provide a safe place for its employees to perform their work .

This case is very different from that of *Jenkins* v. *R. R. Co.*, 39 S. C., 507, 18 S. E., 182. The principles decided in that case are correctly set forth in the syllabus as follows: "The conductor of a preceding freight train and the assistant fireman of a following freight train are fellow-servants to the extent that the fireman on train No. 2 cannot recover from the master for damages received by him in jumping from his engine to avoid a collision with cars on the track detached from train No. 1, of whose presence proper signals by torpedoes or otherwise had not been given. 'Whether persons in the same employment are fellow-servants, does not depend upon the respective rank, grade or authority of the servants. It is the duty of the railroad company as master to furnish a safe track and competent servants; but this duty is not violated where the track, safe in itself, is rendered dangerous for the time by the omission of one of its servants to give the necessary notice of the obstruction thereon to a fellow-servant on an approaching train."

In that case the servant whose negligence caused the injury was not attempting to exercise one of the primary duties of the master, and the obstruction of the track was merely incidental to the operation of the trains of cars running upon it; while in the case under consideration, the track in itself was unsafe for the operation of trains of cars at the time of the injury. The Supreme Court surely could not have intended to infringe upon the doctrine announced in *Coleman* v. *R. R.*, *supra*, when it decided the case of *Jenkins* v. *R. R.*, as both opinions were written by the same member of the Court, and in the Jenkins case no reference is made to the Coleman case. We think the doctrine announced in the case of *Coleman* v. *R. R.* should be affirmed.

The fourth question argued by the appellant's attorney is:

"Did the Circuit Judge err in imposing the absolute duty upon the railway company to provide the plaintiff with safe appliances and a safe place in which to work." His Honor, the presiding Judge, charged the jury that it was the duty of the defendant, Southern Railway Company, to keep its roadbed and appliances in proper and safe condition. The assignment of error is that the presiding Judge should have charged that it was the duty of the defendant company only to exercise ordinary care in keeping the roadbed and appliances in proper and safe condition, and to keep its switches locked and in proper condition. The charge of the Circuit Judge in this respect was in conformity with the doctrine announced by the text-writers and with the decisions hereinbefore mentioned. The facts set forth in the assignment of error constitute matter of defense, but are not elements in the cause of action. *Branch* v. *R. R. Co.,* 35 S. C., 405.

The fifth and last question is: "Did the Circuit Judge err in refusing to charge the defendant's fourth request?" That request was as follows: "If the plaintiff's injuries were caused by his own disobedience of the rules of the company, or if such disobedience contributed thereto as a proximate cause, the defendants are not liable." The assignment of error is that the request embodied a correct proposition of law applicable to the case. The request was properly refused because it was not responsive to any issue made by the pleadings.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.

Mr. CHIEF JUSTICE POPE *concurs.*

Mr. JUSTICE WOODS *dissents and concurs with* Mr. JUSTICE JONES.

Mr. JUSTICE JONES, *dissenting.* The plaintiff engineer seeks to recover damages for personal injury resulting from

alleged negligence of the defendant company and its train conductor, in leaving a "monkey switch" insecurely and improperly fastened and left open and uncared for, "whereby his engine was derailed while returning on the side track from the coal chute, where he had placed coal cars for unloading."

The evidence tended to show that a switchman, Latimer, employed on the same train, had misplaced the switch, or had not securely fastened it, so that the engine, after having safely passed the switch on going to the coal chute, was derailed on its return from the chute.

The jury were instructed, in effect, that the proper placing of the switch was one of the absolute non-assignable duties of the master in discharging his obligation to furnish reasonably safe track and appliances, and the master would be liable for the negligence of a switchman in leaving open or not properly fastening the switch. This was error, in my opinion, and should work a reversal of the judgment.

There is no doubt that it is the absolute duty of a railroad company to its employees to furnish a reasonably safe track and appliances. On the other hand, it is equally clear that a servant assumes the ordinary risks of his employment, including the negligence of a fellow-servant. In the application of these two principles, difficulty arises when an injury results from a cause lying close to the dividing line between them. But in solving such a question, a distinction must be observed between furnishing safe instrumentalities and the use of safe instrumentalities furnished. The former is the master's duty, the latter is the servant's duty. The master's duty is performed when he furnishes a reasonably safe place to work in and reasonably safe appliances to work with, and exercises due care in the selection of his servants, and promulgates necessary rules to guide. From the exigencies of the business and the plainest principles of justice, a railroad company, as between itself and its employees, must be allowed to delegate the duty of using and operating its track

and appliances in the business which gives rise to the employment. If not, then it would be just to hold every farmer, merchant, manufacturer, householder, or other person, employing two or more servants in a common employment, liable for every injury resulting to one employee from the negligence of a fellow-servant in the use of the safe instrumentalities furnished for carrying on the business of the employer. Switches are essential to the safe management and operation of trains; but every one knows the peculiar danger arising from their negligent use. Where the master has not undertaken the duty of operating the switches by vice-principals, so as to justify reliance on the master to perform that duty, every employee engaged in operating a train of cars, knowing that switches must frequently be used in the management thereof, must be held to have assumed the risks of the negligence of a fellow-servant in operating them. When a track is in itself reasonably safe and the switch appliance, as a necessary appendage of the track, is in itself reasonably safe, it can hardly be said that there is a breach of the master's duty to furnish a safe track and appliances, merely because the switch is misplaced through the negligence of a servant engaged in operating the train. Of course, the track was rendered temporarily unsafe at the time of the derailment, but the want of safety did not arise from any defect in the track or appliances, but from mismanagement in the use thereof.

In the case of *Jenkins* v. *R. R. Co.*, 39 S. C., 507, 18 S. E., 182, the Court held, that while it is the duty of a railroad company to furnish a safe track and competent servants, this duty is not violated where the track, safe in itself, is rendered dangerous for the time by the omission of one of its servants to give the necessary notice of the obstruction thereon to a fellow-servant on an approaching train. In support of the decision, the Court quoted with approval an extract from *Howard* v. *R. R.*, 26 Fed. Rept., 837, concluding with these words: "The negligent use by one employee of perfectly safe machinery will seldom be adjudged a breach of the master's

duty of providing a safe place for the employees. Such a construction would make any negligent misplacement of a switch, any collision of trains, even any negligent dropping of tools about a factory, a breach of the duty of providing a safe place. The true idea is that the place and the instruments must in themselves be safe, for this is what the master's duty fairly compels, and not that the master must see that no negligent handling by an employee of the machinery shall create danger, etc." The above quotation states the principles which governed the decision in the Jenkins case. In that case the track was as effectually broken for passage by an obstruction of loose cars left unguarded by torpedoes, or other usual means of signaling danger to the approaching train, as if a misplaced switch had broken or obstructed the track.

The case of *Coleman* v. *R. R. Co.*, 25 S. C., 446, however, does hold that a conductor of a material train in the matter of readjusting a switch is not a fellow-servant with a laborer on his train, but is a representative of the master; and the ruling of the Circuit Court was based upon the authority of the case of *Reed* v. *R. R.*, 37 S. C., 54, 16 S. E., 289, supposed to sustain the same view; may be reconciled with the principle herein contended for, by observing that the complaint, which was held in that case to state a cause of action, alleged that the switch had been left open by the *defendant company,* which was in effect an allegation that defendant had not, as matter of fact, delegated the duty of managing the switch to an employee, and, therefore, the injury was not the result of the negligence of a fellow-servant. If the question in this case had arisen on demurrer, the complaint would, no doubt, have been sustained for the same reason. But the question here arises on the charge as applied to the evidence, and the point is whether the master has the *power* to delegate the duty of operating a switch to an employee so as to exempt the master from liability to another employee engaged in operating the same train for the negligence of the said switchman.

This Court has granted permission to review the Coleman case, and after a careful consideration of the matter, I am convinced that the case should be overruled, for the reasons: First, because it is inconsistent in principle with the later case of *Jenkins* v. *R. R. Co., supra.* Second, because the rule there announced, in its logical results, practically destroys the rule of law that an employee assumes the risks of the negligence of a fellow-servant. Third, because it is in conflict with the law as generally administered in other jurisdictions, and the good reasons therefor.

The authorities elsewhere hold that the opening and closing a switch in the ordinary operation of a railroad is not one of the personal, absolute, non-assignable duties of the master, and that the master is not responsible for the negligent failure to use or the negligent use of safe appliances by a fellow-servant. *Pleasants* v. *Raleigh & Augusta etc. R. R. Co.,* 121 N. C., 492, 61 Am. St. Rep., 674; *Daves* v. *Southern Pacific Co.,* 98 Cal., 19, 35 Am. St. Rep., 133; *Farwell* v. *Boston etc. R. R. Co.* (Mass.), 38 Am. Dec., 339; *Gilman* v. *Eastern R. R. Co.* (Mass.), 87 Am. Dec.. 635. See, also, extensive note in 54 L. R. A., especially at pages 111 and 112, and pages 129 and 130.

The case of *St. Louis Iron Mountain etc. R. R. Co.* v. *Needham,* 63 Fed. Rep., 107, 25 L. R. A., 833, is particularly instructive because of the cases therein cited and the convincing reasoning employed, showing clearly the line of demarkation between the absolute duty of the master and the duty of the servants in the line that separates the work of construction, preparation and preservation from the work of operation, and that the opening and closing of a switch is a duty of operation belonging to the servant.

The judgment of the Circuit Court should be reversed.

This opinion was filed June 24, but on petition for rehearing, remittitur was held up by order on July 4th. Petition was dismissed by formal order, July 13, 1904.