## 8522

## STRAUSS v. ATLANTIC COAST LINE R. R. CO.

1. EVIDENCE—OPINION.—After a witness has described the place and his testimony tends to show his injury was caused by the unsafe condition of the right of way, it would not be prejudicial for him to state that in his opinion it would not otherwise have happened.

2. MASTER AND SERVANT.—The master is liable for injuries caused by the misfeasance or nonfeasance of the servant, not because of any privity between such third person and the master, but because of the privity between the servant and the master.

3. EVIDENCE—CONTRADICTION.—A witness may testify as to what he *saw* contrary to what a witness previously sworn says *he saw*, but not as to what such witness *said*, without laying ground for contradiction.

4. MASTER AND SERVANT—RAILROADS—CONDUCTOR.—Under the evidence in this case that a freight conductor stepped from the engine of his train on a round pin on the right of way which turned and threw him under the wheels, it cannot be said the only reasonable inference from the evidence is that there was no negligence on the part of master in furnishing the servant a safe place to work.

5. IBID.—IBID.—IBID.—ISSUES.—Whether a conductor was negligent in jumping from a slowly moving freight engine, and what was the proximate cause of his injury were for the jury.

6. RAILROADS—ENGINEER—ISSUES.—Whether it is a violation of the rule of a railroad company requiring a freight conductor to ride in his caboose except in cases of necessity, for him to ride on the engine from one station to another to save time when he is behind his schedule is for the jury.

7. MASTER AND SERVANT—SAFE PLACE—CHARGE.—To instruct the jury that it is not an act of negligence for a railroad company to permit a bolt to lie loose upon its roadbed at a station, unless it had knowledge of the presence of the bolt and failed to remove it, would be error.

8. NEGLIGENCE—CHARGE.—If the Judge states in detail to the jury what acts constitute negligence, he would charge on the facts.

9. PLEADINGS—EVIDENCE.—Under allegations of grievous and long continued pain, incapacity for work, maimed, permanently injured, prevented from pursuing any active calling in life and other hurts, evidence as to impairment of sexual powers is competent.

10. APPEAL.—AN EXCEPTION not based on grounds of objection appearing in the record will not be considered.

Before COPES, J., Orangeburg, June, 1912.    Affirmed.

Action by M. A. Strauss against Atlantic Coast Line Railroad Company and Thomas E. White.    Defendants appeal on the following exceptions:

I. "His Honor erred, it is respectfully submitted, in allowing the following testimony to be given by the plaintiff:

" 'If that ground had been in a reasonably safe condition where you got off what would have been the result, what would have happened?

Mr. Moss: " 'We object, that is a question of opinion.

The Court: " 'He can state the facts, and his opinion of the facts.

" 'If that place had been in a reasonably safe condition, what would have happened?    A. I do not think that I could have possibly fallen.'

"This ruling of his Honor was erroneous because it was not competent for the witness to express his opinion as to whether if the ground had been in a reasonably safe condition where he got off he would have fallen, but the facts should have been stated and the jury allowed to draw their own inference; and the action of his Honor in allowing such opinion to be given was highly prejudicial to the rights of the defendant.

II. "His Honor erred, it is respectfully submitted, in refusing to grant a nonsuit as to the defendant, White, at the close of plaintiff's case, for the reasons stated in the grounds of said motion, which grounds were as follows:

" 'I move for a nonsuit as to Mr. White. He is one of the defendants in the case and there is no testimony that he has done anything at all. If he was acting at all, he was acting for the company. The only connection that he could have would be as supervisor of the railroad and there is no testimony connecting him immediately with this accident. There is no testimony except that he was the road master of the company. There is nothing against him and nothing against him as road master.'

III. "His Honor erred, it is respectfully submitted, in refusing to allow the witness, Murray, to testify as to a statement made by the witness, Slawson, at the time of the accident; whereas, his Honor should have held that such statement was competent as a part of the *res gestae,* and further that it was not a contradiction of the witness, Slawson.

IV. "His Honor erred, it is respectfully submitted, in refusing to direct a verdict at the close of the entire case as to the defendant, White, for the reasons stated in the ground of said motion, which ground was as follows:

" 'We move to direct a verdict as to the defendant, White, on the ground that there is no testimony whatever to connect Mr. White, either immediately or in his official capacity, with this injury.'

V. "His Honor erred, it is respectfully submitted, in refusing to direct a verdict in favor of both defendants, for the reasons stated in the grounds of said motion, which grounds were as follows:

First. " 'In that there is no evidence of any negligence on the part of the defendants.

Second. " 'In that there is no evidence of any wilfulness or any wantonness on the part of the defendants.

Third. " 'In that there is no proof that the presence on the track and roadbed of the bolt on which plaintiff slipped when he jumped was known to the defendants or that such bolt was placed there by their authority or permission.

Fourth. " 'In that a railroad company is not required to keep its track and roadbed absolutely safe as a walkway or an alighting place for its employees, and the mere fact that a bolt of the size of that introduced in evidence in this case is permitted to be on such track or roadbed constitutes no negligence against such company.

Fifth. " 'In that the entire proof shows that the injuries sustained by plaintiff were due to his own negligence, (1) in being in an improper place, to wit: on the engine, instead of his proper place, the caboose, without any necessity for him to be in such improper place; and (2) having placed himself in this improper place in jumping from the moving engine, so as to avoid having to walk back to the station, which he would not have had to do had he been in his proper place in the caboose.

Sixth. " 'In that the entire proof shows that the injuries sustained by plaintiff were at least due to his contributory negligence, (1) in being in an improper place, to wit: the engine, instead of in his proper place, the caboose, without any necessity for him to be in such improper place; and (2) having placed himself in this improper place, in jumping from the moving engine so as to avoid having to walk back to the sation which he would not have had to do had he been in his proper place in the caboose, such acts on his part constituting a proximate cause of the accident, without which it could not have happened.

Seventh. " 'That the railroad company is not required to keep its track and roadbed absolutely safe as a walkway and alighting place for its employees, and there is no evidence in this case that this track and roadbed was not in a reasonably safe condition for alighting.'

VI. "His Honor erred, it is respectfully submitted, in refusing to charge defendants' third request to charge, which was as follows:

Third. " 'I charge you that the proper place for a freight conductor to ride is in his caboose and not upon the engine; and if such conductor leaves his caboose and goes upon the engine, and he is injured by reason of his being on the said engine, which injury would not have occurred had he been at his post in the caboose, he is guilty of contributory negligence as a matter of law and cannot recover.'

"This request contained a sound proposition of law directly applicable to the case and the refusal to charge it constitutes prejudicial error.

VII. "His Honor erred, it is respectfully submitted, in refusing to charge defendant's fourth request, which was as follows:

Fourth. " 'I charge you that if a railroad conductor is riding in an improper place, to wit: on the engine, without any emergency requiring it, but in order to save himself the inconvenience of walking back to the station, which he would not have had to do had he been in his proper place in the caboose, he jumps from this improper place and from a moving train, his acts in doing so are contributory negligence as a matter of law for which he cannot recover.'

"This request contained a sound propositon of law directly applicable to the case and the refusal to charge it constitutes prejudicial error.

VIII. "His Honor erred, it is respectfully submitted, in refusing to charge defendants' fifth request, which was as follows:

Fifth. " 'I charge you that to permit a bolt to lie loose upon a railroad track is not an act of negligence on the part of the railroad company, unless it be proven that the company had knowledge of the presence of the bolt in such position, and failed to remove it.'

"This request contained a sound proposition of law directly applicable to the case and the refusal to charge it constitutes prejudicial error.

IX. "His Honor erred, it is respectfully submitted, in refusing to charge defendants' sixth request, which was as follows:

Sixth. " 'I charge you that the mere fact that the plaintiff was thrown by a bolt lying on the defendant's roadbed at the point where he jumped from the train does not show any negligence on the part of the defendant, but it is incumbent upon plaintiff to go further and prove that the defendant knew of the presence of such bolt on its roadbed and had failed to remove it.'

"This request contained a sound proposition of law directly applicable to the case and the refusal to charge it constitutes prejudicial error.

X. "His Honor erred, it is respectfully submitted, in refusing to charge defendants' seventh request, which was as follows:

Seventh. " 'I charge you that the law does not impose upon a railroad company the duty of keeping its track and roadbed in an absolutely safe condition as a walkway for its employees, and the fact that a bolt of the size of that introduced in evidence in this case is permitted to be on such roadbed constitutes no act of negligence against the railroad company.'

"This request contained a sound proposition of law directly applicable to the case and the refusal to charge it constitutes prejudicial error.

XI. "His Honor erred, it is respectfully submitted, in giving the jury the following charge:

" 'The negligence of the defendant will not give the plaintiff the right to recover, unless that negligence is the proximate cause of the injury. So, in regard to contributory negligence, unless that contributory negligence is the proximate cause, the contributing cause, unless it contributes as a

proximate cause to the injury, then, it is not a defense.
Before contributory negligence can become a matter of
defense, it must contribute to the negligence of the defend-
ant as a proximate cause of the injury, just like the negli-
gence of the defendant must be the proximate cause of the
injury.'

"This charge was erroneous and prejudicial because it
stated that for contributory negligence to be a defense, it
must, like the negligence of the defendant as a cause of
action, be *the* proximate cause of the injury, whereas con-
tributory negligence is a defense if it contributes to the
injury in the slightest degree as *a* proximate cause thereof.

XII. "That his Honor erred in permitting the plaintiff to
testify in response to the following question: 'What effect
has it on your powers of manhood, on your sexual powers?'
Objection. Mr. Moss: " 'We object. That is a particular
injury and should be specifically alleged. They have not
set that up in the complaint and it is therefore incompetent.'

The Court: " 'Answer the question. They have been
materially decreased.'

Mr. Moss: " 'Will your Honor have our exceptions
noted?'

Mr. Raysor: " 'I will withdraw the question.'

"We respectfully submit that it is improper to permit a
question to be asked and on objection and after it has been
answered for counsel to withdraw the question, especially
when the jury has heard the answer of the witness.

XIII. "That his Honor erred in permitting witness to tes-
tify in response to the following question: 'What are the
symptoms? You have a condition which the patient shows
from subjective and objective symptoms. A pain in the
head, general melancholy, loss of appetite, despondency,
sexual impotency.

Mr. Moss: " 'We object to anything about loss of his
sexual powers.

The Court: " 'I think he can answer the question.

Mr. Moss: " 'Note my exception to anything he says about sexual matters. One is sexual impotency, that it is very characteristic of it.

Mr. Raysor: " 'He may strike it out.

Mr. Moss: " 'We object to his striking it out, after it has already come out and the jury has heard it.'

"We submit that it was error to permit the witness to answer the question when no such injury has been alleged, and it is improper to permit a question to be asked and when objected to, and after it has been answered, for counsel to withdraw the question, the jury having heard the answer.

XIV. "That his Honor erred in permitting witness to answer the following question: 'You say it was rough? Can you explain what that consisted of, how it appeared to you? There were broken up bottles there, all about there.

Mr. Moss: " 'We object to that.

" 'And rocks.

Mr. Moss: " 'We object and ask that that be stricken from the record.'

"We submit that this was error as it was not in response to the allegations of the complaint.

XV. "That his Honor erred in permitting the witness to answer the following question: 'State whether you consider it dangerous or not?

Mr. Moss: " 'We object. He must state the facts. Not his opinion.'

"We submit it was error to allow witness to answer this question, as this was not a proper subject for opinion evidence.

XVI. "That his Honor erred in not granting defendant's motion for a new trial on the minutes of the Court.

"We submit that the record discloses no testimony tending to show negligence on the part of the defendant."

*Messrs. Moss & Lide* and *Henry E. Davis,* for appellants, cite: *Witness should not give his opinion after stating the*

*facts:* 59 S. C. 311; 82 S. C. 388; 74 S. C. 102; 68 S. C. 265; 84 S. C. 290; 81 S. C. 193; 79 S. C. 151; 91 S. C. 523. *Declaration of Slawson was part of res gestae:* 82 S. C. 388; 16 Cyc. 1152. *No proof of negligence by defendants:* 76 S. C. 557; 90 S. C. 42; 88 S. C. 553; Ray Neg. Imp. Dut. 134; 3 Ell. on R. R., sec. 1307; 71 N. W. 662, 540; 24 S. W. 782; 85 Am. St. R. 539; 75 S. C. 299. *Plaintiff was negligent:* 82 S. C. 542; 90 S. C. 42; 81 S. C. 100; 1 Strob. 525; 77 S. C. 328; 85 Am. St. R. 539; 108 Fed. 747; 36 S. E. 599; 3 S. E. 350; 47 S. E. 281; 3 Ell. on R. R., sec. 1313. *Place master should furnish:* 70 S. C. 470; 90 S. C. 42; 37 Am. St. R. 336. *Injury not alleged should not be proved:* 84 S. C. 117; 69 S. C. 360; 37 S. C. 366; 45 S. C. 278; 57 S. C. 433; 76 S. C. 557; 84 S. C. 117; 82 S. C. 388.

*Messrs. Raysor & Summers* and *Adam H. Moss* cite: *Knowledge of a defect is not necessary to show negligence in master:* 30 Mich. 181; 75 Fed. 102; 19 D. C. 12; 55 N. E. 703; 57 N. E. 1109; 91 N. W. 336; 41 S. E. 216; 211 U. S. 608; 61 At. 383; 59 L. R. A. 302; 36 S. E. 700; 66 Vt. 331; 76 Ga. 823; 74 Ind. 440; Labatt on M. & S., sec. 125. *Whether violation of rules caused injury is for jury.* 58 N. Y. S. 1061; 40 S. W. 188; 83 S. W. 289; 26 S. E. 922; 70 S. C. 242; 82 S. C. 550; 66 S. C. 533; 56 S. C. 94; 74 S. W. 100; 75 S. W. 53, 561; 119 Fed. 288; 60 S. C. 153; 65 N. E. 169; 39 Atl. 996; 86 N. W. 900; 70 S. C. 470; 93 S. W. 184; 105 Fed. 554; 39 So. 619; 86 S. C. 106; 62 S. C. 130; 39 A. 996; 49 S. W. 710; 49 S. E. 1000; 98 S. W. 898, 529; 42 So. 1019; 62 S. E. 616; 99 S. W. 856; 58 S. E. 249; 83 N. E. 431; 68 At. 713; 86 P. 305; 120 N. W. 858; 58 S. E. 1082. *Contributory negligence defined:* 70 S. C. 491. *Evidence as to special injury:* 71 S. C. 340; 71 N. W. 475; 43 A. D. 64; 44 A. D. 11; 6 S. W. 810; 87 N. W. 716; 92 N. W. 487; 29 Pa. Sup. Ct. 136; 56 N. Y. S. 1038; 60 S. C. 9; 76 N. Y. S. 832; 48 Am. R. 622. *Opinion of witness here was not prejudicial:* 59 S. C. 316;

61 S. C. 379; 62 S. C. 281; 73 S. C. 566; 79 S. C. 341; 92 S. C. 304. *Evidence of Slawson is not part of res gestae:* 68 S. C. 310, 369; 76 S. C. 92. *As applying to this case:* 60 S. W. 591.

April 16, 1913. The opinion of the Court was delivered by

MR. CHIEF JUSTICE GARY. This is an action for damages, alleged to have been sustained by the plaintiff, through the wrongful acts of the defendants.

The complaint alleges, that the plaintiff was in the employment of the defendant railroad company as a conductor, and while in charge of a freight train on the 6th of May, 1911, at a station called Creston, stepped on an iron bolt, that had been allowed to remain on the right of way, near the railroad track, which caused him to be thrown to the ground, and under the wheels of said freight train, then moving slowly, whereby he was seriously and permanently injured.

That said injuries were caused, by the joint and concurrent negligence and wantonness of the defendants, in not furnishing him a safe place to work; in negligently constructing said right of way and station grounds, in that the station grounds were uneven; in not inspecting the same so as to see that they were safe and suitable, for the purposes intended; and in allowing an iron bolt to be imbedded in the right of way, so near the railroad tracks, as to make the same unsafe and dangerous, for those alighting from the cars.

The defendants interposed a general denial, to the allegations of the complaint, and set up the defense of contributory negligence, on the ground that the plaintiff was riding on the engine, which was not the place provided for him, and on the further ground, that the train was in rapid motion, when he jumped from the engine.

The jury rendered a verdict in favor of the plaintiff, for $22,500, and the defendants appealed upon exceptions, which will be reported.

First Exception. Conceding that there was error, in allowing the witness to express his opinion, as to what would have happened, if the place had been in a reasonably safe condition, it certainly was not prejudicial.

The plaintiff had already described the place, where he was injured, and his testimony tended to show, that his injury was caused by the unsafe condition of the right of way, and that in his opinion it would not otherwise have happened.

Second Exception. The complaint alleges, that the defendant, White, was charged with the duty of keeping the right of way, station yards, and railroad tracks of his codefendant, in a safe condition.

He occupied a dual relation which is thus expressed in *Mayer* v. *Thompson-Hutchinson Building Co.,* 38 L. R. A. (Ala.) 433 : "The liability of the master to third persons, does not depend upon any privity, between him and such third persons. It is the privity between the master and servant, that creates the liability of the master, for injuries sustained by third persons, on account of misfeasance or nonfeasance of the servant or agent."

In a note to this case, after mentioning the confusion that has arisen, from the failure to observe the dual relation which the servant occupies, it is said, that it is "because they (textbook writers), do not distinguish between the direct liability, of an agent or servant to third persons, for breach of his own duty toward them, and an indirect liability to them, for breach of duty to his employer, and failing to recognize or indicate the fact, that an agent or servant may owe duties to third persons, at the same time he owes service to his employer."

This language is quoted with approval in the cases of *Ellis* v. *Ry.*, 72 S. C. 465, 52 S. E. 980, 2 L. R. A. (N. S.) 378; *Carter* v. *R. R.*, 84 S. C. 546, 66 S. E. 967, and *Ry.* v. *Devlin*, 85 S. C. 128, 67 S. E. 149, and is conclusive of the question under consideration.

Third Exception. The question presented by this exception, arose as follows, during the examination of the witness, Murray: "Was any one else there? No one that I saw. Would you have seen them? Yes, sir; Slawson came up, after I went in the office and reported the facts. Did he make any statement as to where he was? Here is what he said: 'Was standing in front of my store door, and saw him fall'—

Mr. Raysor: "We object; there is no foundation for any contradiction.

The Court: "I don't think that the witness can be contradicted, unless the foundation is laid.

Mr. Lide: "We are not attempting to contradict any statement, that Mr. Slawson said.

The Court: "I think he can say, that he saw Mr. Slawson, but not what Mr. Slawson said."

The ruling of the presiding Judge is sustained by the case of *State* v. *Stockman*, 82 S. C. 388, in which it was held, that the second witness could testify as to what he *saw*, but not as to what the first witness had *said*, without laying the foundation for otherwise contradicting him.

Fourth Exception. What was said in considering the second exception, is conclusive of this question.

Fifth Exception. The first question that will be considered is, whether there was any testimony tending to show negligence, on the part of the railroad company.

The plaintiff testified as follows: "What did you do after you left Sumter? We did the regular work at all the stations, at Pinewood, Remini, and Lone Star, and leaving

there I got on the engine and came to Creston. Were you on schedule time, leaving Lone Star that morning? No, sir; we were a little late. When you left Lone Star, what did you do? I got on the engine leaving Lone Star. You rode to where? To Creston. How much late were you? I don't know how much late we were. Why did you get on the engine? It was nearest to me, and it saved time for me to get on the engine. It was up to me, to save as much time as possible, and to get over the road as quick as possible. Explain why you had to make up time? We were late and had to make up all the time we could, not to exceed our running time, thirty miles an hour. When you are behind your schedule what is your duty? 'To make up all the time we can, so as not to delay unnecessarily. The reason that you boarded the engine was what? To save having to stop the cab, to get off and on. Coming up it was nearest to me. How long was that train? Seventeen cars, all told. If you had not gotten on the engine, what would the train have had to do? It would have had to stop for me. Were you on the engine prior to that time? Yes, sir; I was. Where from? From Pinewood to Remini, from Remini to Lone Star, and from Lone Star to Creston. Where is it customary for the conductor to ride? On the engine, or any part of the train, on top of the cars or in the shack; he is responsible for the whole train. Your duties call you where? Anywhere on the train; I am in charge of the train. Is it a usual or an unusual occurrence, for you to ride on top of the train or on the engine, is it a usual thing for you to ride on the engine? It is a usual occurrence. About how late were you? I don't know; I looked at my watch, and it was eleven twenty-five, and we were due over here at eleven twenty-five or thirty, at Orangeburg. You got on the engine? Yes, sir. Where is the place that you usually ride? On the engine or in the cab, whichever is most convenient. Have you any rule as to that? Not that I know of; I have never been informed of any. You

usually ride in the engine? On the engine for convenience in making time, the cab is on there for our convenience if we wish to ride in it. You were going to Creston—what happened to you there? We were running slow—barely moving, and I stepped off. How fast were you running? Four miles an hour, barely moving at a good walking rate, I stepped off the engine, holding on with my right hand, and I stepped on the ground with my right foot, and struck some object. In what direction did you step? The train was running in a southern direction, and you stepped off on the right side of the engine; how did you step? I stepped off with my right foot first, and my left foot next, the natural step in walking. Did you take any step after you touched the ground? No, sir, not that I remember; I fell immediately on touching the ground. What did you strike? I don't know; I struck some object. Did you or not start to walk along by the side of the engine? I took a step in the same direction that the train was going. You were going where? Going up the steps to the depot. You got off the train to go up there? Yes, sir. What happened to you? I fell. What caused you to fall? I don't know what it was, but it was something lying there that rolled or moved with me. * * * Why did you do that; why did you get off the train that day as it was moving along? I always got off when it was moving along. I wanted to get to the station as quick as I could. What for? To register my train to get what orders they had; that is a regular registering point. You did that to make up time? Yes, sir. Where did you get off that train, with regard to the depot? At the south end. Was it or not opposite the steps? Very nearly opposite the steps. * * * Could you tell after you struck the ground, what its condition was? It was rough and I could not catch myself when I fell. Why? I slipped down toward the track. Why did you slip down, toward the side of the track? The dirt that they filled in, was in rolling shape and sloped down toward the rail. That was the rea-

son that you fell toward the rail, on account of the dirt being uneven there? Yes, sir. I want you to tell again to the jury, to illustrate just how you got off that train, and how you struck the instrument on the ground. In stepping off, I had hold of the hand rail with both feet on the step. When I go to make a step, I turn one hand loose. I stepped down with my right foot, and then when I put my left foot down, I struck the bolt."

Harry L. Slawson, a witness for the plaintiff, testified as follows: "You had your hand on the steps? Yes, sir. Did you or not see Mr. Strauss alight from that train? Yes, sir. You saw him fall under the train? Yes, sir. Shoot back under the train? Yes, sir. Did you see what caused him to go under there? Yes, sir; he stepped on a pin, a roller about that long. Did you pick it up? Yes, sir. That is the bolt? Yes, sir. He stepped off with his right foot first, and his left foot caught that, and he went under the train? Yes, sir. Is that the bolt? Yes, sir.

Mr. A. H. Moss: "We offer this bolt in evidence.

"Where did it roll; where did you pick it up? Right up to the rail. Far enough out for him to step on it? Yes, sir; it rolled back toward the rail. State whether you saw the imprint in the ground? Yes, sir; and I showed it to Mr. Murray. When? The same day. Did you say that it sloped down toward the rail? Yes, sir. From the depot down toward the rail? Yes, sir. State whether or not the rails were below the level of the ground? The rails were below that. State whether or not the right of way, sloped down to the rails? Yes, sir. State whether or not in addition to that slope there, whether it was rough? It was very rough, I guess it must slope three or four inches. Tell the jury how that slope slanted toward the rail, you say that it was rough? Yes, sir. State whether it was ridged? Yes, sir, it was, with holes in it. State whether or not it was full of little valleys and trenches? Yes, sir, there were little

valleys. That was on the yard there? Yes, sir. Right in the yard at Creston? Yes, sir. That is right where the train employees get off and on the train? Yes, sir. State whether or not the right of way was in a safe condition? It was not. What is the condition of that right of way? It has been rough for quite a while. What was its condition for persons getting off and on the trains? It was unsafe."

It cannot be successfully contended that the only reasonable inference from the foregoing testimony is, that there was no negligence whatever, on the part of the defendant, railroad company, in providing a safe place for the plaintiff to work.

The next question for determination is, whether the testimony shows, that the plaintiff was guilty of contributory negligence.

The rule is thus stated in *Creech* v. *Ry.,* 66 S. C. 528: "Ordinarily, it should be left to the jury to determine, whether the passenger's act of alighting or boarding, under all the circumstances was negligent. * * * In addition to the speed of the train, there are other circumstances proper to be considered, in determining the facts of contributory negligence, as to the age or vigor of the passenger, whether he was with or without encumbrances, whether it was dark or light, the distance between the platform steps of the car and the landing, etc. But the main circumstance relied on, in the demurrer, to sustain contributory negligence being the speed of the train, moving at the rate of three or four miles an hour, and the fact not warranting a conclusive presumption of contributory negligence, it was not error to deny the demurrer, in so far as it was based upon contributory negligence."

The Court uses the following language in *Gyles* v. *Ry.,* 79 S. C. 175, 60 S. E. 433: "The rule of law declared in this State is that it is not negligence *per se,* to board or alight from a moving train, unless the train is moving so fast, as to make the danger of alighting or boarding, obvious to a per-

son of ordinary prudence, and that ordinarily it should be left to the jury to determine, whether the passenger's act is negligent, under the circumstances."

What was said in regard to a passenger is applicable to an employee. *Bouchillon* v. *Ry.,* 90 S. C. 42.

In *Stephens* v. *Ry.,* 82 S. C. 542, 64 S. E. 601, it is said: "Whether it is negligence, to jump from a slowly moving train, is a question for the jury, and the Court will not hold it to be contributory negligence, as a matter of law. To take the case from the jury, it must clearly appear, that the train was going at such a high rate of speed, that it was in fact obvious to the plaintiff, or would have been obvious to any reasonable man, that injury would probably result from jumping." In that case the Court quotes with approval the following language of the Court, in the case of *McKee* v. *Tourtelotte,* 167 Mass. 68: "The nature and degree of the danger, the extent of plaintiff's appreciation of it, and the exigency of the work all enter into consideration, and no universal rule can be laid down." These authorities show that the Circuit Judge could not have decided that the facts constituted contributory negligence on the part of the plaintiff, or what was the proximate cause of the injury without invading the province of the jury.

Sixth Exception. Rule 866 of the railroad company, was as follows: "The proper place for a freight train conductor, while his train is in motion, is in the cupola of his caboose, if it has one. If the caboose should not be provided with a cupola, he will then maintain such position, either on the top or inside, as will give him a full view of his train, and enable him to see that his men perform their duties, and that they go promptly when necessary to flag. He must also keep a lookout, especially when rounding curves. He should not ride on the engine, except in case of necessity.

The rule does not prohibit the conductor, from riding on the engine at all times, but permits him to do so, in cases of

necessity.   The testimony of the plaintiff tends to show, that the necessity existed in the present case, and that the presiding Judge could not have charged as requested, without invading the province of the jury.

Eighth Exception.   The rule in such cases, is thus stated in *Richey* v. *Ry.*, 69 S. C. 387, 48 S. E. 285: "The fourth question argued by appellant's attorneys, is: 'Did the Circuit Judge err, in imposing the absolute duty upon the railway company, to provide the plaintiff with safe appliances, and a safe place in which to work?'   His Honor, the presiding Judge, charged the jury, that it was the duty of the defendant, to keep its roadbed and appliances, in proper and safe condition.   The assignment of error, is, that the presiding Judge should have charged, that it was the duty of the defendant company, only to exercise ordinary care, in keeping the roadbed and appliances in proper and safe condition. * * * The charge of the Circuit Judge in this respect was in conformity to the doctrines announced by the text writers, and with the decisions hereinbefore mentioned.   The facts set forth in the assignment of error, constitute matter of defense, but are not elements in the cause of action."   Citing *Branch* v. *Ry.*, 35 S. C. 405, 14 S. E. 808.   These authorities are conclusive of this exception.

Ninth Exception.   What has just been said disposes of this exception.

Tenth Exception.   The Court could not undertake to state in detail, what facts are sufficient to constitute negligence, without violating section 2, article V, of the Constitution, which provided that "Judges shall not charge juries, in respect to matters of fact."   *Weaver* v. *Ry.*, 76 S. C. 49, 56 S. E. 657.

Eleventh Exception.   When the charge is considered in its entirety, it will be seen, that the jury were not misled by the use of the word "the" instead of "a," as contended by the appellant.

Twelfth Exception. The injuries alleged in the complaint were, that "the plaintiff has suffered grievous and long-continued bodily pain; was and is, and always will be, incapacitated for work * * * has been maimed and permanently injured, and prevented from pursuing any active calling in life, and otherwise hurt." Not only was the question admissible under the allegations of the complaint, but it would have been admissible under general allegations of injury, in order that the jury might be able to render a proper verdict.

Thirteenth Exception. What has just been said, disposes of this question.

Fourteenth Exception. This exception can not be sustained, for the reason that the grounds of objection were not stated.

Fifteenth Exception. What has already been said disposes of this exception.

Judgment affirmed.

MR. JUSTICE WOODS *disqualified.*