8675

EBERLE v. SOUTHERN RAILWAY CO.

(79 S. E. 792.)

CARRIER AND PASSENGER. MILEAGE TICKETS. APPEAL AND ERROR. CHARGE. WAIVER. PUNITIVE DAMAGES.

1. Where defendant carrier, under schedules filed with the interstate commerce commission, sold a mileage ticket to plaintiff, providing that tickets issued in exchange for mileage coupons would be honored for continuous passage to destination when presented in connection with the mileage ticket without limitation as to time, it could not by filing new schedules, providing that mileage tickets so exchanged would be honored only for continuous passage to destination commencing on the date stamped on the back thereof, which date should be that on which the tickets were issued in exchange for coupons, change plaintiff's contract so as to limit the time of use of tickets issued on his book, and the fact that such tickets were good for transportation in accordance with plaintiff's contract did not constitute a discrimination in violation of the interstate commerce act (Act Feb. 4, 1887, c. 104, 24 U. S. Stat. 379 [U. S. Comp. St. 1901, p. 3154]).

2. Where plaintiff, in an action against a carrier for refusal to accept a mileage ticket for transportation, was entitled to a peremptory instruction that the ticket tendered was good, defendant was not prejudiced by an instruction that its agents could waive a stipulation in the contract with reference to limitation of tickets issued

on mileage and leaving it to the jury to say whether they had done so.

3. Though a *tort-feasor* is not conscious of an invasion of the rights of another, yet if a tort is committed in such a manner or under such circumstances that the jury may find that a person of ordinary reason and prudence would have been conscious of it as such, it warrants the infliction of punitive damages.

Before MEMMINGER, J., Hampton, December, 1912. Affirmed.

Action by A. S. Eberle against the Southern Railway Company. From judgment for plaintiff, defendant appeals. The facts are stated in the opinion.

*Mr. J. W. Manuel,* for appellant, cites: *Punitive damages:* 29 S. C. 265; 69 S. C. 434; 48 S. E. 460; 90 S. C. 435; 73 S. E. 790; 75 S. E. 1018; 69 S. C. 434; 48 S. E. 460. *Lawful tariffs govern irrespective of contract:* 63 S. E. 528; 73 S. E. 1027; 73 S. C. 1020; 158 U. S. 98; 202 U. S. 242; 204 U. S. 426; 94 N. E. 906; 113 Pac. 433; 204 U. S. 449. *Carrier not estopped to deny the invalid contract:* 127 N. W. 543; 94 N. E. 906; 219 U. S. 467.

*Messrs. J. W. Vincent* and *Geo. Warren,* for respondent.

October 24, 1913.

The opinion of the Court was delivered by MR. JUSTICE HYDRICK.

This appeal is from a judgment against defendant for damages for the unlawful and wanton invasion of the rights of the plaintiff, as a passenger, by one of defendant's ticket collectors. The action grew out of the following facts: On July 12, 1910, plaintiff purchased one of defendant's mileage tickets, the coupons of which were exchangeable for passage tickets, which, by the terms of the contract, were to be honored "when presented in connection with the

mileage ticket." This mileage ticket was issued in accordance with the schedule of rates which had been filed with the interstate commerce commission and published, and was in effect at that time. Thereafter, defendant filed with the commission a mileage ticket contract, wherein the requirement as to the exchange of mileage coupons for passage tickets and the use thereof was changed, so that such tickets would "be honored for continuous passage to destinations commencing on date stamped on back of such exchange tickets, which dates shall be the dates on which such tickets are issued in exchange for coupons." This modification of the previous tariff went into effect September 21, 1910, and was effective on May 19, 1911, when defendant's ticket collector refused to honor a passage ticket from Charlottte, N. C., to Columbia, S. C., which plaintiff had obtained, on October 15, 1910, by exchange of coupons from his mileage ticket, after the new mileage ticket contract had gone into effect. For reasons unnecessary to state, plaintiff decided not to use the ticket on the date of issue, which was stamped on the back of it. The ticket collector refused to honor it on the ground that it was out of date, passage not having been commenced on the date of issue.

Plaintiff testified, in substance: On deciding not to use ticket that day, went to defendant's agent at Charlotte and asked him to take it back and give me back the coupons; he refused, but said agent at Columbia would redeem ticket; saw agent at Columbia next day; said he had formerly redeemed such tickets, but had not done so for some time, but that it would be redeemed if sent to Atlanta office; asked him if I could ride on it, and he said, certainly, I could; on May 19, 1911, became passenger on defendant's road from Charlotte to Columbia, and presented this ticket to ticket collector, who refused to honor it, on the ground that it was out of date, and threatened to eject me unless I would pay fare in cash; he refused to hear or heed my explanation as to how I happened to have the ticket, and

as to what defendant's agents had told me, and insulted me by telling me that I might have stolen it, and that I was lying in what I was saying about it, and that he would eject me if I did not pay my fare; on my refusal to pay and threat to forcibly resist expulsion from train, he contemptuously told me that he would pay my fare, and make me a present of it. Under the circumstances, I paid my fare in cash.

It appears from some of the allegations of the complaint, and testimony elicited, and the argument of plaintiff's attorneys, that they sought to bring this case within the principles of *Smith* v. *Ry.*, 88 S. C. 421, 70 S. E. 1057, 34 L. R. A. (N. S.) 708. But that case was different from this in at least two material particulars: First, in that case no question of any departure from the tariff made and filed with the interstate commerce commission and published, as required by the act of Congress, or from the privileges therein, and thereby contracted for, was raised by pleadings or proof, or presented to the Circuit Court, and relied upon as a defense, and, therefore, no such question was properly before, or decided by, this Court. Second, the contract in that case provided that the mileage coupons would be honored in exchange for passage tickets, which would be issued "in accordance with special tariffs and circulars of instructions," and that provision was one of the grounds of decision, but it does not appear that the plaintiff's contract contained any such provision.

On the other hand, defendant's attorney contends that this case is within the act regulating commerce and the principles of those cases which hold that the carrier cannot depart from the tariff filed and published, as required by that act, and the privileges and facilities therein granted and allowed.

Defendant's contention that the filing of a subsequent tariff had the effect of cancelling and annulling the contract which it had made with the plaintiff is untenable. The

case of *Louisville etc. R. Co.* v. *Motley*, 31 Sup. Ct. 171, 219 U. S. 467, 55 L. Ed. 297, 34 L. R. A. (N. S.) 671, is relied upon to sustain that contention. But learned counsel has evidently overlooked the difference between the effect of an act of Congress and an act of the railroad company upon such contracts. In the Motley case, the Court held that an act of Congress, passed within the exercise of its constitutional power to regulate commerce, which made unlawful the contract which had theretofore been lawful, rendered it incapable of enforcement. But that is very different from holding that the railroad company can, by any act of its own, destroy the validity of its own valid contracts, such a proposition cannot be sustained upon reason or authority.

It is true that, when a schedule of rates has been filed and published, as required by the act, it has the force and effect of law, and, until changed in the manner prescribed by law, it cannot be departed from in favor of any passenger or shipper so as to give him any undue preference or advantage, or subject others to any unjust or unreasonable prejudice or disadvantage, or create any unjust discrimination. But it is equally true that, when a member of the public makes a contract with a carrier, which the act regulating commerce permits the carrier to make, and which is in accordance with the tariff in effect, when it is made, the carrier cannot, by any act of its own, destroy or impair the validity of such contract. To hold otherwise would violate the fundamental principles of law and justice. The contract which defendant made with the plaintiff, in selling him the mileage ticket, did not violate either the letter or the spirit of the interstate commerce law. The sale of such tickets is not only not prohibited by the act, but is authorized, in express terms, in section 22. (Act of Congress, Feb. 4, 1887, c. 104, 24 Stat. 387, U. S. Comp. Stats. 1901, p. 3170.) The authority to make such contracts carried with it, by necessary implication, the right

and duty to perform them according to their terms; and it is also implied that declaration of Congress that, in the making and performing of such contracts, no such discrimination would be created as the act was intended to prohibit.

In *Interstate Com. Com.* v. *Baltimore & O. R. Co.,* 145 U. S. 263, 12 Supt. Ct. 844, 36 L. Ed. 699, the Court affirmed the right of carriers to sell "party-rate" tickets at a lower rate than regular individual tickets, on the ground that it was not an unjust discrimination in favor of persons using them. That principle was reaffirmed in *Texas etc. R. Co.* v. *Interstate Com. Com.,* 162 U. S. 197, 16 Sup. Ct. 666, 40 L. Ed. 940, and in *Interstate Com. Com.* v. *Alabama M. R. Co.,* 168 U. S. 144, 18 Sup. Ct. 45, 42 L. Ed. 414.

In this case, no difference was made in plaintiff's favor in the rate. The only difference between plaintiff's contract and the one subsequently filed appears to be in the time when passage tickets must be used after having been issued. We are unable to see wherein carrying out the plaintiff's contract, as to that requirement, would have given him any such undue or unreasonable preference or advantage over other passengers as the act was intended to prevent.

Plaintiff's contract, having been made in accordance with and under the sanction of the law, was valid, and the subsequent filing and publication of a tariff containing a different contract cannot be allowed to have the effect of cancelling and annulling the exchange requirement of his contract and substituting for it the one subsequently filed and published. It would be as sound in principles to hold that the company could, by a subsequent tariff, cut down the time within which the mileage coupons in the ticket which it sold plaintiff could be used from one year to three months, and thereby confiscate those which had not been used at the end of three months, as to say that it could, in that way, destroy or impair the validity of that part of the contract

which provides that passage tickets obtained by exchange for coupons from the ticket will be honored at any time within the year, when presented with the mileage ticket.

This case does not fall within the principle of the Armour Packing Company's case, 209 U. S. 57, 28 Sup. Ct. 428, 52 L. Ed. 681, which dealt with a violation of the interstate commerce act by carrying out a contract for a rate for the transportation of property, after it had been changed by the filing and publication of a higher rate. The act not only does not sanction the making of such contracts, but, by necessary implication, forbids it; because, if allowed, they could be used as a means of creating and continuing the very discriminations and inequalities in rates which the act was intended to prevent, and thereby thwart its purpose. But the act expressly permits the sale of mileage, commutation and excursion tickets, and, as we have seen, the permission is tantamount to a declaration that no unjust discrimination will be wrought thereby, and carries with it the right and the correlative duty to perform such contracts according to their terms.

It appears, therefore, that the ticket tendered by plaintiff was good and should have been honored, not because of any supposed waiver of any stipulation of the contract by the defendant's agents, as plaintiff's counsel attempted to show, but because it was issued and presented in accordance with the terms of the contract. The Aldrich case, 95 S. C. 427, 79 S. E. 316, recently filed, and the cases therein cited, show clearly that plaintiff could have acquired no right by virtue of anything that either of defendant's agents told him. No statement which they, or either of them made to him gave his contract more validity or vitality than it already had.

Therefore, while the Court erred in charging the jury that defendant's agents could have waived the stipulation of the contract, and in leaving it to the jury to say whether

they had done so, the error was favorable to defendant, because it afforded defendant an opportunity of escape from liability on the finding against the alleged waiver, when the plaintiff was entitled to have the jury instructed that the ticket was good, and that it should have been honored. Therefore, the error was not prejudicial.

The only other question made by the exceptions is, whether the Court erred in refusing to charge defendant's second request, to wit: "If the jury shall find that defendant's agent on train threatened to eject plaintiff, by mistake, under a supposed right, then they cannot give punitive damages; unless act was done with actual wrong intention and with such recklessness as to show malice or a conscious disregard of plaintiff's right, they cannot find any punitive damages."

The request was not in accord with the principle laid down in *Tollison* v. *R. Co.,* 88 S. C. 7, 70 S. E. 311, where it was held that, even though a tort-feasor might not be conscious of his invasion of the rights of another, yet if the tort was committed in such a manner or under such circumstances that the jury find that a person of ordinary reason and prudence would have been conscious of it as such, it warranted the infliction of punitive damages.

Affirmed.

MR. JUSTICE GAGE was not on the bench when this case was decided.

NOTE: This case has been carried to the United States Supreme Court on writ of error.