9090

GRAINGER, AS ADMR., v. GREENVILLE, S. & A. RY. CO.

(85 S. E. 231.)

APPEAL AND ERROR. HARMLESS ERROR. EVIDENCE. MASTER AND SERVANT. SAFE PLACE. MODE OF WORK. APPLIANCES. ASSUMPTION OF RISKS. NEGLIGENCE. WILFULNESS.

1. APPEAL AND ERROR—HARMLESS ERROR—EVIDENCE.—The admission of hearsay testimony is not reversible error, unless prejudicial to appellant.

2. MASTER AND SERVANT—SAFE PLACE.—Where there is testimony to the effect, that there was a failure on the part of the master, to provide a safe place for the servant to work, it makes out a *prima facie* case of negligence against the master.

3. MASTER AND SERVANT—SAFE APPLIANCES.—Lack of knowledge on the part of the master, of a defect in appliances, being matter of excuse, constitutes matter of defense, and is not an element of the cause of action.

4. NEGLIGENCE—ISSUES.—Where a *prima facie* case of negligence has been made out by the plaintiff, the Court cannot direct a verdict on the ground that the *prima facie* case has been rebutted by other evidence, without invading the province of the jury.

5. MASTER AND SERVANT—ASSUMPTION OF RISKS.—A servant does not assume the risk of his master's failure to provide a safe place.

6. MASTER AND SERVANT—WILFULNESS.—The testimony tending to show that the mind of a foreman adverted to the probability of an overhanging bank falling over upon workmen, when he ordered them to dig back under it, the issue whether there was a conscious failure of the master to use due care for his servants, was properly submitted to the jury.

(By MR. JUSTICE HYDRICK: Messrs. Justices Watts and Fraser concur. Messrs. Chief Justice Gary and Justice Gage dissent as to presence of such evidence in case.)

Before WILSON, J., Greenville, April, 1914.    Affirmed.

Action by J. B. Grainger, as administrator of the estate of Abell Grainger, deceased, against Greenville, Spartanburg and Anderson Ry. Company. The facts are stated in the opinion. From judgment for plaintiff, defendant appeals on the following exceptions:

1. Error of law of his Honor in allowing the question by plaintiff's attorneys, over objection, to the witness, Elizabeth Ogden, and her answer thereto, as follows:

Q. Now you go ahead and state the conversation which passed between you and him while there. A. I went out to the edge of the cut, and looked down the side where they were working; not seeing the gang, I asked Mr. Musselwhite where they were. He laughingly replied that they were out of sight and were going to dig under the house. I asked him if they were not in danger, and he replied, with a shrug, "I am obeying orders." This was practically the conversation we had.

The grounds of this exception and errors are that this question sought to and did elicit an answer which was hearsay evidence and inadmissible; was a statement of an agent of the defendant which was not in the scope of his employment, was not a part of the *res gestae,* was not binding on the defendant, and was greatly prejudicial in this case.

2. Error in allowing the plaintiff's attorney to ask the witness, W. A. Bishop, the question, and his answer, over objection, as follows:

Q. Did you hear Mr. Musselwhite say anything, and if so, what? A. Well, he said they were going to cave in the house, the men were out of sight. He says the men are hidden and were going to cave in your house. But it was apparently in fun.

The errors assigned are that this evidence was hearsay and inadmissible, was the statement of an agent of the defendant not in the scope of his employment, was a mere expression of opinion, not based on facts, could not bind the defendant and was greatly prejudicial in this case.

3. Error of law by his Honor in allowing the questions by plaintiff's attorneys, over objections, to the witness, Will Ashmore, and his answers thereto, as follows:

Q. State what you said, if anything? A. I said to Allen, I wouldn't work in that hole for a dollar and a quarter a day. Q. Why not? A. Because it was too deep. Q. After you said that what, if anything, did Mr. Musselwhite say? A. I didn't say anything to Mr. Musselwhite. I said to Uncle Allen Bowen, I wouldn't work in that hole for a dollar and a quarter a day. Q. Did you state that in Mr. Musselwhite's presence? A. Yes, sir; Mr. Musselwhite told me to go on up the road, he was bossing them.

The errors assigned are: That this evidence was heresay and not admissible, was the statement of a third party of his conversation to another fourth party and not binding on the defendant, was a mere expression of opinion, not based on any facts, by an outsider, trying to make trouble, and

who needed to be rebuked, and was not relevant or compe-
tent and very prejudicial to defendant.

4. Error in allowing the question by plaintiff's attorneys,
over objection, to the witness, Tom Norris, and his answers
thereto, as follows:

Q. Tell the jury what you heard, if anything? A. I
heard Musselwhite tell him to go on up the road, that he was
running that job. Q. You didn't hear Mrs. Ogden say
something to Mr. Musselwhite, did you? A. I heard Mrs.
Ogden saying something to Mr. Musselwhite that morning
about that bank being dangerous along there about that
peach tree. He tells her that he meant to cave that peach
tree off during that day.

The errors assigned are: That this evidence was merely
hearsay and not admissible, was the statements of an agent
of defendant not in the scope of his agency, not a part of the
*res gestae,* not binding on the defendant, not relevant, and
was the expression of a mere opinion not based on facts and
greatly prejudicial to defendant.

5. Error in allowing the questions by the plaintiff's attor-
neys, over objection, to the witness, Frank Mims, and his
answers thereto, as follows:

Q. Frank, did you hear this conversation between Will
Ashmore and Mr. Musselwhite? Just tell the Court what
took place. A. As we were passing where Mr. Mussel-
white's men were working, Will Ashmore told old man
Allen Bowen he wouldn't work in that hole for a dollar and
a quarter a day, and Mr. Musselwhite replied to him to go
on up the road, that he was managing that job.

The errors assigned are: That this evidence was hearsay
and not admissible, was the statement by a third party of
his conversation to another fourth party and not binding on
the defendant, was a mere expression of opinion, not based
on any facts, by an outsider, trying to make trouble, and
who needed to be rebuked, and was not relevant or compe-
tent and very prejudicial to defendant.

6. Errors in allowing the witness, Harvey Moore, to testify, over objection, to this conversation between Mrs. Ogden and Musselwhite for the reason that the evidence was hearsay, incompetent and not admissible, and was greatly prejudicial in the case.

7. Error of law on the part of his Honor in refusing to direct a verdict in behalf of the defendant, at the close of all the evidence, on defendant's motion, as to punitive damages.

The errors assigned are: That there is no competent evidence to support the allegations, or cause of action, as to punitive damages, there being no evidence of wilfulness, wantonness, or even recklessness. There was no proof of any orders, rules, or acts, of the defendant to show wilfulness, but in fact plaintiff's evidence showed conclusively that the death of his intestate was caused by his own act in digging into an embankment, and that he well knew of the condition of the embankment, of the method and manner of digging dirt therefrom, and of the consequences naturally and reasonably to be anticipated in the progress of such work of excavating, and that his labors were in the soil under natural and usual conditions.

8. Error of law on the part of his Honor in refusing to direct a verdict in behalf of the defendant, at the close of all the evidence, on defendant's motion, as to actual damages.

The errors assigned are: That there is no evidence to support the allegations, or cause of action, as to negligence; that there was no evidence to support a single one of the specifications of negligence of the complaint; no evidence of negligence as to the safety of the place, in that the place was not dangerous in the first instance as the testimony all shows, but the danger, if any, arose from the progress of the work and was merely incidental to the work; that there was no evidence of negligence as to the failure to give notice to the plaintiff of the alleged dangerous conditon of the

embankment, there being no duty resting on the defendant to give notice to the plaintiff, as the alleged danger was not hidden or unusual and the plaintiff did or should have had knowledge thereof; there was no evidence of negligence as to the alleged orders or instructions given to the plaintiff to work in a place of known danger or to work by unsafe methods, because there was no testimony that the foreman ordered deceased to work at the particular place at which he was injured, or that he ordered him to remain there and work after he became apprehensive of danger; that there was no negligence as to the failure to inspect which was a proximate cause of the alleged injuries.

9. That his Honor erred, as a matter of law, in refusing the motion to direct a verdict in favor of the defendant, at the close of all the testimony, for the reasons that the evidence shows, if anything, that the plaintiff assumed all of the risks incident to his employment, and that if he was injured in any way, it was the result of the assumption of the risk which he did assume, and the testimony shows that his injuries, if any, resulted from the risk which he assumed as a part of his employment. That the danger which, according to the testimony, caused the death of young Grainger arose during the progress of the work, and either from causes which were unknown to both Grainger and the representative of the defendant and could not by reasonable care have been known, or else from causes which were just as apparent to Grainger as to the representative of the master, and that therefore the charge of negligence on the part of the master in that respect is wholly unsustained by the testimony; or else if the cause was apparent during the progress of the work, then it was equally known to Grainger and, therefore, must have been assumed by him.

10. That his Honor erred in charging the jury and submitting to them the question of punitive damages, for the reason that under the law and the evidence the defendant was not guilty of any wilfulness, and this issue should not

have been submitted by his Honor to the jury. There was no proof of any orders, rules, or acts of the defendant to show wilfulness, but in fact plaintiff's evidence showed conclusively that the death of his intestate was caused by his own act in digging into an embankment, and that he well knew of the condition of the embankment, of the method and manner of digging dirt therefrom, and of the consequences naturally and reasonably to be anticipated in the progress of such work of excavating, and that his labors were in the soil under natural and usual conditions.

11. That his Honor erred in charging the jury and submitting to them the issue of negligence, and actual damages, for the reason that under the law and the evidence the defendant was not guilty of any acts of negligence, as alleged in the complaint, but the evidence showed conclusively that there was no negligence by the defendant as to the safety of the place; that there was no evidence of negligence as to the failure to give notice to the plaintiff of the alleged dangerous condition of the embankment; there was no evidence of negligence as to the alleged order or instructions given to the plaintiff to work in a place of known danger or to work by unsafe methods; that there was no negligence as to the failure to inspect, which was a proximate cause of the alleged injuries.

12. That his Honor erred on the whole case in refusing to direct a verdict in favor of the defendant, and in submitting to the jury the issues of wilfulness and negligence, and in refusing to grant a new trial, on defendant's motion.

The errors assigned are: That the evidence shows conclusively, and this is the only inference that can be drawn therefrom, that the plaintiff's intestate was injured and killed by his own act in doing a piece of work in a safe way, and that there was no actionable negligence on the part of the defendant. That his Honor correctly laid down the law of this case in charging the 11th and 13th requests of

defendant, and the verdict of the jury was contrary to this law and should be set aside.

*Messrs. Haynsworth & Haynsworth,* for appellant, submit: *Danger originated in progress of work:* 72 S. C. 242; 4 Labatt, Master and Servant (2d ed.), sec. 1518. *No inference of defect in place or appliances:* 72 S. C. 398; 97 S. C. 112; 69 S. C. 530; 66 S. C. 256; 39 S. C. 39. *Master not bound to supervise executive details of work:* 4 Labatt, Master and Servant, sec. 1066, 1516. *As to orders to workmen:* 89 S. C. 387, 391. *The common law doctrine of assumption of risks, and not constitutional provisions apply to this case, as defendant was not engaged in operating a railroad:* Const. 1895, art. IX, sec. 15; 127 U. S. 205; 165 U. S. 150; 1 L. A. R. (N. S.) 696; 55 Pac. 875.

*Messrs. Gaston & Hamilton,* also for appellant, submit: *As to admission of testimony:* 68 S. C. 310; *Ib.* 462; 83 S. C. 477. *Proof of agency:* 89 S. C. 470. *As to safe place, etc.:* 72 S. C. 242; 26 Cyc. 1101; 111 U. S. 313; 47 N. E. 308; 66 N. E. 759; 73 N. E. 945; 67 Fed. 507; 14 C. C. A. 492; 20 A. & E. Ann. Cas. 248; 55 S. C. 488; 89 S. C. 387; 95 S. C. 138. *Contributory negligence:* 80 S. C. 351; 82 S. C. 549. *Assumption of risk:* 80 S. C. 351; 72 S. C. 242; 84 S. C. 287; 72 S. C. 237 and 264; 70 S. C. 470; 74 S. C. 419; 93 S. C. 194.

*Messrs. McCullough, Martin & Blythe,* for respondent, cite: *As to negligence:* 89 S. C. 387. *As to testimony:* 59 N. E. 804. *Assumption of risks:* 72 S. C. 239-240; 80 S. C. 248. *Order to dig in dangerous way:* 89 S. C. 387, 389, 391. *Plan of work:* 89 S. C. 389, 390; 95 S. C. 138; 64 S. C. 217. *Constitutional provisions as to assumption of risks:* Const., art. IX, sec 15; 80 S. C. 539; 86 S. C. 300, 304, 305; 82 S. C. 303; 56 S. C. 453; 73 S. C. 570. *Injury in progress of work:* 99 N. Y. 368; 2 S. E. 24; 89 Tenn.

118; 34 W. Va. 500; 162 Ill. 447. · *Negligent orders:* 4
McCrary 629; 14 Fed. 564.  *Unusual dangers:* 161 Mass.
502; 37 N. E. 664; 73 Minn. 80; 75 N. W. 230; 58 Mo.
App. 192; 67 Fed. 515. *Inexperience of servant:* 106
La. 170; 30 So. 254; 47 L. R. A. 597; 61 L. R. A. 162; 35
N. E. 550; 31 N. E. 1075.

May 4, 1915.

The first opinion was delivered by MR. CHIEF JUSTICE
GARY.

This is an action for damages, alleged to have been sus-
tained through the wrongful acts of the defendant in caus-
ing the death of plaintiff's intestate.

The third and fourth paragraphs of the complaint, are as
follows:

"That on Friday, November 22, 1912, Abell Grainger,
who was a minor, 19 years of age, and inexperienced in the
work in which he was engaged, was in the employ of defend-
ant company, as a laborer on a construction gang, a few
miles from the city of Greenville.  He had been engaged in
this work for about two weeks, and before that time, plain-
tiff had had no experience in such work; the gang during the
time said Grainger had been in its employ, had been engaged
in general construction and building work, excavating, fill-
ing, etc.  Said Abell Grainger was working under Mr.
Musselwhite, who was foreman of the gang, and had the
right and power to direct and control his services, and the
services of the gang, and all work and acts herein referred
to were done under the orders and directions of said Mussel-
white, and all instructions and orders herein referred to
were given by said Musselwhite and by defendant company,
through its representatives, officers and duly authorized
agents.

On Thursday, November 21, 1912, said Abell Grainger,
along with the gang, was put to work by defendant com-
pany at the work of quarrying·and removing soft stone or

6—101

gravel from a pit in a cut on defendant's line of road, which was new and unusual work for both him and the gang, he having never done such work before.

That the overhanging roof of the pit was composed of soft and seamy strata of soil, gravel, etc., and that it had been further rendered seamy and unsafe, by the blasting and other work that had been done there by the defendant company, by the percolation of water, etc., rendering the place dangerous; but that the danger was latent and not known to said Grainger, although the defendant knew, or by proper inspection, or by the exercise of proper care and diligence should have known, and could have easily avoided said dangers.

While engaged in said work a large amount of earth caved and fell in upon said Abell Grainger and his fellow workmen, and crushed and injured him, so that a few days thereafter he died."

In the fifth paragraph of the complaint, the proximate causes of the injury are alleged, one of which is that the defendant negligently, recklessly and wantonly failed to provide a safe place for Abell Grainger to work.

After denying certain allegations of the complaint, the defendant set up the following defenses: 1. Negligence of a fellow servant; 2. Contributory negligence, and 3. Assumption of risk.

The jury rendered a verdict in favor of the plaintiff for $3,000.00 (but did not state how much thereof was for actual, or what part was for punitive damages), and the defendant appealed.

The exceptions numbered 1, 2, 3, 4, 5 and 6 are overruled, for the reason that even if there was error, it was not prejudicial.

The next question that will be considered is whether there was error on the part of his Honor, the presiding Judge, in refusing defendant's motion for the direction of a verdict, on the ground that there was no tes-

timony tending to sustain the cause of action, based on negligence.

There was testimony tending to sustain the allegations in paragraph 4 of the complaint, as to the dangerous condition of the place where Grainger was at work when injured.

When there is testimony to the effect that there was a failure on the part of the master to provide a safe place for the servant to work, it makes out a *prima facie* case of negligence against the master; and if there are reasons why the master should not be held liable for his failure to discharge this primary duty to the servant, he must rely upon them as a defense.

"The allegation on the part of a servant that he has sustained an injury while in the service of the master, by reason of the neglect of a duty which the latter owes to the former, unquestionably states a cause of action, for, as said above, the omission of such duty affords at least *prima facie* evidence of negligence, and while it is true that such *prima facie* evidence showing may be rebutted by evidence tending to show that such omission of duty on the part of the master was not owing to his want of care and diligence, but was due to other causes which he could not control, yet until such *prima facie* showing is rebutted, it will be conclusive.

For instance, the master may show that he did not know, and could not, by the use of due care and diligence, have ascertained, that there was any such defect in the machinery or other appliances furnished the servant, as would be likely to cause the injury complained of; but until this is shown, the failure to perform an acknowledged duty stands unexcused and renders the master responsible.

It seems to us, therefore, that want of knowledge on the part of the master of the defect in the machinery, being a matter of excuse for the failure on his part to perform an acknowleged duty, constitutes matter of defense, and is not an element in the cause of action. *Branch* v. *Ry.,* 35 S. C. 405, 14 S. E. 808.

These principles were subsequently approved, in the following cases: *Mickle* v. *Company,* 41 S. C. 399, 19 S. E. 725; *Farley* v. *Company,* 51 S. C. 222, 28 S. E. 193, 401; *Hicks* v. *Ry.,* 63 S. C. 559, 41 S. E. 753; *Richey* v. *Ry.,* 69 S. C. 387, 48 S. E. 285; *Willis* v. *Company,* 72 S. C. 126, 57 S. E. 538; *Green* v. *Ry.,* 72 S. C. 398, 52 S. E. 45, 5 A. & E. Ann. Cas. 165; *Trimmier* v. *Ry.,* 81 S. C. 211, 62 S. E. 209; *Strauss* v. *Ry.,* 94 S. C. 324, 77 S. E. 1117; *Staunton* v. *Corporation,* 97 S. C. 403, 81 S. E. 660.

It will thus be seen that his Honor, the presiding Judge, could not have ruled the *prima facie* evidence of negligence was rebutted by the testimony upon which the defendant relied to sustain its defense without invading the province of the jury.

The next question to be determined is, whether there was error on the part of his Honor, the presiding Judge, in refusing the motion for the direction of a verdict for the defendant, on the ground that the only inference to be drawn from the testimony was, that Grainer assumed the risks incident to his employment.

There was testimony to the effect that the injury was caused by the failure of the defendant to provide a safe place to work, which was one of the primary duties resting upon the master. It is unnecessary to cite authorities to sustain the proposition that the failure of the master to discharge this primary duty is not one of the risks assumed by the servant.

The last question presented by the exception is, whether his Honor, the presiding Judge, erred in refusing the defendant's motion for the direction of a verdict, on the ground that there was no testimony tending to show that the plaintiff was entitled to punitive damages.

There is no testimony tending to show that the defendant had actual knowledge of the dangerous condition of the place where the intestate was injured; nor did the witnesses upon whose testimony the plaintiff relied, give the defend-

ant, or the foreman of the gang, any information as to the condition of the soil where Grainger was at work; nor were their passing remarks sufficient to put the defendant upon inquiry, which, if pursued with due diligence, would have led to knowledge as to the dangerous condition of the soil.

I think, therefore, there should be a new trial.

MR. JUSTICE HYDRICK delivered the following opinion:

I think the judgment should be affirmed. The deceased was shown to be a young man, nineteen years of age, of good health, habits and character. A verdict for $3,000.00 for his death can hardly be said to include punitive damages. But if it did, there was evidence to sustain such a verdict. The workmen were ordered to dig back under a bank—a work obviously dangerous—if there had been no testimony tending to show that the attention of the foreman was drawn to the danger of the situation, his failure to take proper precautions for the safety of the workmen might be attributed to inadvertence, or negligence only. But the mind of the foreman evidently adverted to the probability of the overhanging bank falling upon the workmen, as shown by the fact that he put some workmen above to dig off the overhanging bank as the workmen below undermined it, and ordered them to the other side of the cut just before the accident. Besides this, within an hour of the time the bank fell on Grainger, the foreman's attention was called to the workmen by two different persons, Mrs. Ogden asked him if they were not in danger. He replied with a shrug, "I am obeying orders." And Will Ashmore, an employee of defendant engaged with another squad of laborers working near by, passed by where deceased was at work, and said to one of the deceased's colaborers, in the presence and hearing of the foreman, "I would not work in that hole for $1.25 a day." Whereupon, the foreman told Ashmore to go on, that he (the foreman) was bossing that job.

I think this testimony warranted a reasonable inference of a conscious failure to observe due care for the safety of the workmen under the bank. In several cases this Court has held that if a tort is committed in such manner or under such circumstances that the jury may find that a person of ordinary reason and prudence would have been conscious of it as such, punitive damages may be recovered. *Tollison* v. *R. Co.,* 88 S. C. 7, 70 S. E. 311; *Eberle* v. *Ry.,* 98 S. C. 89, 79 S. E. 792. The judgment is, therefore, affirmed.

MESSRS. JUSTICES WATTS and FRASER concur in the opinion of MR. JUSTICE HYDRICK.

MR. JUSTICE GAGE, concurring in the result. I am of the opinion that the Court was right to submit the issues to a jury.

I do not think there was any evidence of wilfulness. But I think that cannot affect the result, for the amount of the recovery excludes the idea that the jury computed punitive damages.

I think the judgment must be affirmed.